Filed 2/3/15  R.W. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.W., | |
| Petitioner, | E062341 |
| v. | (Super.Ct.No. RIJ1300527) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jacqueline C. Jackson, Judge.  Petition denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, and Anna M. Marchand, Deputy County Counsel, for Real Party in Interest.

1

On November 13, 2014, the juvenile court terminated mother's reunification services and set the Welfare and Institutions Code section 366.26 hearing.[1] Petitioner R.W. (mother) contends real party in interest Riverside County Department of Public Social Services (the department) failed to provide mother with reasonable mental health services. We deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 2013, the department received an immediate response referral for general neglect. Mother and the children, AH. (born 2010), A.H. (born 2011), and A.L.H. (born 2012) (collectively children), were homeless, variously lying and standing on the stairs in the heat at a motel. The reporting party had paid for a room for mother and children the previous night. Children had been seen digging in the trash and lying on the stairs after the hotel voucher expired. Mother admitted she had no place to stay.

Mother had a prior history with the department. Father admitted to seeing children despite a restraining order prohibiting him from contact with mother. Father used marijuana, had a criminal record, and was on probation.[2] On May 16, 2013, the juvenile court detained children.

The department filed a juvenile dependency petition alleging, as to mother, that she was unable to provide children with adequate food, clothing, medical treatment, and protection (b-1); had a history of domestic violence with father and that father had a

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father is not a party to the petition.

2

restraining order against him protecting mother and children (b-2); mother abused marijuana while supervising children (b-3); and mother has a history with the San Bernardino County Child Protective Services as a result of allegations of emotional abuse and general neglect (b-5).

In the jurisdiction and disposition report filed June 5, 2013, the social worker noted children had been returned to mother's care on May 16, 2013. The social worker recommended children remain in mother's care. On May 30, 2013, the social worker referred mother to domestic violence counseling, individual counseling, and a psychotropic medication evaluation.

On June 10, 2013, the juvenile court found the allegations in the petition true, permitted physical custody of children to remain with mother, and ordered the department to provide, and mother to participate in, family maintenance services. In the June 27, 2013, detention report the social worker noted she had received a telephone call from the executive director of the shelter facility in which mother and children were residing. The director reported mother was not adequately supervising her children; she had left children alone at the facility on several occasions when she went out shopping. On June 25, 2013, the social worker received another call from the facility director reporting mother had again left her children unsupervised on June 20, and 23, 2013. The social worker spoke with mother who "indicated that it was [the social worker's] job and the facilit[y's] responsibility to co-parent her children." Mother failed to engage in any of the services to which she was referred by the department and refused mental health services.

3

The department took children into protective custody on June 25, 2013. On June 27, 2013, the department filed a supplemental juvenile dependency petition alleging mother had left children without adult supervision on several occasions (s-1) and had failed to enroll in any case plan services (s-2). On June 28, 2013, the juvenile court detained children.

In the July 18, 2013, supplemental jurisdiction and disposition report, the social worker noted mother had left children unsupervised on 10 occasions. Mother "failed to enroll in counseling, parenting to enhance her skills and increase her knowledge base and is not participating in substance abuse treatment." Mother had "failed to engage in any of the services." The social worker had no confirmation whether mother had engaged in counseling services or a psychotropic medication evaluation as required by her case plan. The social worker noted mother had unresolved mental health issues.

The social worker received a letter dated August 19, 2013, on behalf of mother from Victorious Living Institute's Home for Women reflecting mother was residing in the facility where she received seven hours of daily life skills training, drug and alcohol counseling, anger management, relapse prevention, parenting, and spiritual studies. On August 27, 2013, the juvenile court struck the s-2 allegation, found the S-1 allegation true, and removed children from mother's custody.

On December 2, 2013, the social worker filed a status review report in which she recommended mother's reunification services be continued. Mother had moved from two transitional housing facilities and currently resided with relatives. On May 30, 2013, the social worker referred mother for individual counseling and a psychotropic medication

4

evaluation. Mother attended a few sessions of counseling and then moved to another city. The social worker issued another referral which mother failed to attend. Mother moved again. On September 18, 2013, the social worker made another referral. On November 8, 2013, the counselor informed the social worker mother had attended two sessions.

Regarding the psychological evaluation ordered by the court on June 28, 2013, the social worker had issued a referral on July 24, 2013. As of November 26, 2013, mother had yet to complete the evaluation. Mother attended two appointments, but left prior to completion of testing and had not returned to complete the process.

In the February 14, 2014, six-month status review report, the social worker recommended mother's reunification services be continued: "During the past three months, [mother] has enrolled in a parenting program, attends individual counseling services, and has completed her psychological evaluation." On February 7, 2014, the social worker spoke to a counselor who informed the social worker mother "is participating on a consistent basis and attends counseling every other week." The social worker received mother's completed psychological evaluation on December 23, 2013.

The psychologist noted, "There are also indications [mother] may have some mental confusion and have some predisposition to experience hallucinations." Mother reportedly suffered from depression, anxiety, and Bipolar I disorder. The psychologist further observed mother "is in need of individual psychotherapy and the administration of psychotropic medications mainly for mood stabilization." "In total, there was precious little with the presentation of [mother] which would, in any way, allow for reassurance

5

regarding her ability to care for her children. Rather, her presentation demonstrates it would be overtly detrimental to place children in her care at this juncture. Nor is there any reasonably likelihood she would benefit from services in the foreseeable future."

Nonetheless, the social worker noted that "based on [mother's] recent efforts and commitment to her children, it is likely that the children will be able to be placed in her care within the next review period." The social worker made no mention in the report that mother had undergone any psychotropic medication evaluation or had been prescribed any psychotropic medications. On March 17, 2014, the juvenile court continued mother's reunification services.

In the 12-month status review report dated August 13, 2014, the social worker recommended mother's reunification services be terminated. Mother now believed actor Lance Gross, rather than the presumed father, was the biological father of children. The social worker noted, "Although [mother] has certainly taken steps in the right direction, she has yet to address her mental health issues by being assessed by a psychiatrist and has not engaged in individual counseling services on a consistent basis. There have been some concerns that have recently come to my attention regarding her mental stability." Mother "has yet to address her mental health issues and it appears that she is now out of touch with reality as evidenced by her alleged relationship with an actor and him fathering her children."

The social worker reported that mother had been provided with three referrals for counseling and a psychotropic medication evaluation. With respect to the first and third referrals, mother had attended a few sessions and then moved. With respect to the second

6

referral, mother never attended any sessions. On September 23, 2014, the juvenile court continued the matter in order to allow mother to obtain a psychiatric evaluation.

On November 5, 2014, the social worker issued an addendum report noting mother "has been provided with referrals to at least four different therapists, three psychiatrists for medication evaluations and has not made any efforts to engage in services. At the last hearing held on September 23, 2014, the Court ordered the Department to refer [mother] for counseling services and a medication evaluation. A referral was completed and on September 26, 2014, [mother] was authorized to participate in counseling services and a medication evaluation . . . ." Mother "has not made any efforts to enroll in the program."

On November 13, 2014, the court noted, "I have that [mother] didn't participate in a medication evaluation." The court then terminated mother's reunification services and set the section 366.26 hearing.

DISCUSSION

Mother contends the department failed to offer reasonable services with respect to the social worker's concerns as to mother's mental health. We disagree.

"'The paramount goal in the initial phase of dependency proceedings is family reunification. [Citation.]' [Citation.] 'At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child.' [Citation.] Reunification services must be 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' [Citation.] Accordingly, a reunification plan must be appropriately based on the particular family's 'unique facts.' [Citation.] 'Absent a finding of detriment, even incarcerated parents are

7

entitled to reasonable reunification services, whatever the likelihood of success. [Citations.]'" (*In re T.G.* (2010) 188 Cal.App.4th 687, 696-697.)

The department "'must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence. [Citation.]' [Citation.]" (*In re T.G., supra,* 188 Cal.App.4th at p. 697.)

Here, the department offered reasonable reunification services to mother. First, mother's mental health issues were not even one of the conditions which led to the court's jurisdictional finding regarding children. On June 10, 2013, the juvenile court assumed jurisdiction over minors based on the allegations in the petition, none of which included issues regarding mother's mental health.

Second, the department repeatedly offered mother mental health services. On May 30, 2013, prior to the juvenile court's jurisdictional finding, the department referred mother for individual counseling and a psychotropic medication evaluation.

In the subsequent detention report based upon the supplemental juvenile dependency petition which, again, made no allegations regarding mother's mental health,

8

the social worker noted mother had refused mental health services. In the supplemental jurisdiction and disposition report, the social worker, while acknowledging mother had unresolved mental health issues, noted she had no confirmation mother had participated in counseling services or a psychotropic medication evaluation as provided as part of her case plan.

In the December 2, 2013, status review report, the social worker noted three referrals had been issued to mother for individual counseling and psychotropic medical evaluations. Mother either simply failed to complete the evaluations or show up at all. The social worker specifically observed she had issued a referral for a psychological evaluation on July 24, 2013, which had been ordered by the court on June 28, 2013. Mother had attended two appointments, but had left prior to completion of testing and had not returned to complete the process.

In the six-month review report filed on February 14, 2014, the social worker noted she had finally received a completed psychological evaluation of mother on December 23, 2013. Mother had "denied she has ever been prescribed any psychotropic medications." Nonetheless, the psychologist observed mother "is in need of individual psychotherapy and the administration of psychotropic medications mainly for mood stabilization." However, mother had still apparently failed to participate in a psychotropic medical evaluation.

On August 13, 2014, the social worker noted mother "has yet to address her mental health issues by being assessed by a psychiatrist and has not engaged in individual counseling services on a consistent basis." Mother "indicated that she does not need

9

medication to assist her . . . ." On September 23, 2014, the juvenile court continued the hearing specifically to allow mother to participate in a psychotropic medical evaluation.

In the subsequent report, the social worker noted mother "has been provided with referrals to at least four different therapists, three psychiatrists for medication evaluations and has not made any efforts to engage in services. At the last hearing held on September 23, 2014, the Court ordered the Department to refer [mother] for counseling services and a medication evaluation. A referral was completed and on September 26, 2014, [mother] was authorized to participate in counseling services and a medication evaluation . . . ." Mother "has not made any efforts to enroll in the program." Thus, the department offered reasonable mental health services to mother; mother simply failed to avail herself of the services offered. Substantial evidence supports the juvenile court's determination that the department offered mother reasonable reunification services.

### DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.

10