Filed 10/2/15  In re E.D. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.D., et al., Persons Coming Under the Juvenile Court Law. | B262141 (Los Angeles County Super. Ct. No. CK19295) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ERIK D., Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Teresa Sullivan, Judge.  Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Erik D. (father) filed this appeal after a six-month review hearing conducted pursuant to Welfare and Institutions Code section 366.21, subdivision (e).[1] He contends substantial evidence does not support the court's finding that the Los Angeles County Department of Children and Family Services (Department) provided reasonable services to promote reunification. The Department first contends we should dismiss father's appeal because a reasonable services finding is not appealable under section 395. Alternatively, the Department contends the finding is supported by substantial evidence.

We conclude the court's reasonable services finding is appealable because it adversely affects father's parental interest in reunification. The finding is supported by substantial evidence, and so we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father has two children with mother, a four-year-old boy and a six-year-old girl (Children). Mother has three older children with two different men and has been subject to twelve dependency referrals dating back to 1993, three of which resulted in dependency cases. A 2010 dependency proceeding commenced after father was arrested for spousal abuse. The court in that case sustained allegations that father has a history of violent altercations with mother, as well as a history of illicit drug abuse and violence with one of mother's relatives. Father was convicted of felony assault and sentenced to four years in prison. The court granted father family reunification services, but father was incarcerated during the entire family reunification period, and in March 2011, the court determined father had not participated substantially with the programs and terminated family reunification services.

On May 3, 2014, the Children and their 13-year-old half-sister were taken into protective custody after the police found them in a motel room with their paternal

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

grandmother, who was incoherent and possibly abusing prescription drugs. When a social worker with the Department interviewed mother on the day the children were detained, mother reported that father was "incarcerated for violation of probation" but she did not know in which jail. Father's parole officer reported father was not complying with the conditions of his parole, and there has been a warrant out for his arrest since February 2014. The Department filed a petition alleging the children were dependents under subdivision (b) of section 300, based upon caretaker neglect and mother's history of drug abuse, and the court ordered the children detained.

On June 10, 2014, an investigating social worker interviewed father at Pitchess Detention Center. Father reported he was due to be released in a few weeks and was willing to comply with court orders in order to reunify with his children.

On June 13, 2014, the Department filed both a First Amended Petition and a Jurisdiction and Disposition Report. The First Amended Petition added an allegation against father under subdivision (b) of section 300, on the grounds that his earlier violent acts and drug abuse (which were the subject of the 2010 dependency proceeding) and his failure to comply with court-ordered programs, including a parenting class, a domestic violence class, a substance abuse program, and drug testing, placed the Children and their 13-year-old half-sibling at risk of harm. The addendum report that accompanied the First Amended Petition explained that the Department added the allegation "to address prior unresolved issues" with father.

On June 23, 2014, father, who remained incarcerated at Pitchess Detention Center, appeared at the scheduled adjudication hearing. The court appointed counsel to represent father, found him to be the Children's presumed father, and admonished him to update his attorney and the Department social worker of any address changes. The court continued the adjudication to July 30, 2014, and ordered the Department to interview father about the paragraph b-3 allegations and submit a supplemental report.

On July 30, 2014, the Department filed a report stating it was unable to interview father. Father had been released from jail, but neither the Department nor father's attorney had contact information for father. At the scheduled hearing on the same day,

3

father appeared, waived his rights to contest the allegations, and signed a case plan that appears to be the result of settlement negotiations between the Department and both parents. Father's signed case plan gave father a number of responsibilities, which the court reviewed with him. He would comply with the terms of his probation or parole as well as any restraining order or criminal court order. He would attend individual counseling to address case issues including substance abuse and domestic violence, plus parenting classes and anger management classes. He would submit proof of attendance at one meditation meeting or yoga classes. He would submit to drug testing and attend a drug treatment program if he had any missed or dirty tests. Father's attorney provided the court with a phone number belonging to father's sister as a good contact number, as father's phone was recently disconnected and he did not have housing. Father planned to provide the Department with a mailing address and would obtain his own cell phone as well.

The social worker attempted to contact father by telephone on September 26, 2014, and again on December 10, 2014, but both attempts were unsuccessful. Although the record does not contain information about what offense led to father's re-imprisonment, at some point he was incarcerated at North Kern State Prison. The social worker attempted to speak with father's counselor to get information about services available to father in prison, but as of the six-month review hearing, the Department had not been able to provide services to father.

At the six-month review hearing on February 4, 2015, the court found clear and convincing evidence that the Department had provided reasonable reunification services, over father's objection. It also found that father had made minimal progress towards eliminating the conditions leading to the Children's detention, but ordered six months of additional reunification services.

Father filed a notice of appeal on February 10, 2015.

4

## DISCUSSION

**Appealability of Reasonable Services Finding**

The Department urges us to dismiss father's appeal, arguing that because father is only appealing the court's reasonable services finding, and not any order, the finding is not appealable. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147 (*Melinda K.*).) Father contends an appeal is proper under *In re T.G.* (2010) 188 Cal.App.4th 687, 691-696, because the court's finding is intertwined with its review hearing orders and adversely impacts his legal interest in reunification.

"'A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment.' [Citations.] As a result of these broad statutory terms, '[j]uvenile dependency law does not abide by the normal prohibition against interlocutory appeals.' [Citations.] The dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable. [Citation.] '"A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." [Citation.]' [Citations.]" (*In re S.B.* (2009) 46 Cal.4th 529, 531-532.)

"Generally, a parent who is aggrieved by an order after judgment in a juvenile dependency proceeding may take an appeal from that order." (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1265.) "An aggrieved person . . . is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] . . . [¶] . . . All parents, unless and until their parental rights are terminated, have an interest in their children's 'companionship, care, custody and management . . . .' [Citation.] This interest is a 'compelling one, ranked among the most basic of civil rights.' [Citation.] While the overarching goal of the dependency law is to safeguard the welfare of dependent children and to promote their best interests [citations], the law's first priority when dependency

5

proceedings are commenced is to preserve family relationships, if possible. [Citation.] To this end, the law requires the juvenile court to provide reunification services unless a statutory exception applies. [Citations.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

In the case relied upon by the Department, Division Two of this court held that a parent cannot appeal from a reasonable services finding alone, without also appealing an adverse order. (*Melinda K., supra*, 116 Cal.App.4th at p. 1150.) Underpinning the court's holding was the language of section 395, which authorizes appeals in dependency cases from the judgment and "any subsequent order." Because the mother in *Melinda K.* only challenged the court's *finding* that she was provided with reasonable reunification services, without also challenging any related *order,* she could not proceed on appeal. Instead, a parent who seeks to challenge a finding made at a review hearing must file a petition for writ of mandate. (*Melinda K., supra*, at p. 1153.) In reaching this conclusion, the *Melinda K.* court emphasized that "mother was not aggrieved by the finding . . . given that services were continued for at least another six months and no negative consequence flowed from the reasonable services finding." (*Ibid.*) The *Melinda K.* court did reach the substance of mother's arguments, because it opted to treat mother's appeal as a petition for writ of mandate. (*Id.* at p. 1157.) In doing so, the court acknowledged that limiting a party's ability to appeal a particular finding without also appealing the order posed perils later in the case: "a finding which is not appealable now may later become part of the factual basis for a subsequent appealable order. But it is impermissible to challenge an earlier finding by way of an appeal from a subsequent order . . . . [¶] Thus, mother cannot appeal the reasonable services finding now, nor can she raise the issue by way of an appeal from any subsequent adverse order . . . . We therefore hold that a petition for writ of mandate is the appropriate method by which to challenge a finding made by a juvenile court at a review hearing which does not result in an appealable order. In this way, a parent or legal guardian will be afforded meaningful appellate review of a finding which may ultimately have a significant effect on the dependency proceedings." (*Id.* at pp. 1156-1157.)

6

The appellate court in *In re T.G.* distinguished *Melinda K.* and held that the father could appeal based solely on an adverse finding that he was provided with reasonable reunification services. (*In re T.G.*, *supra*, 188 Cal.App.4th at p. 696.) In *Melinda K.*, the dependency court "found [mother] in compliance with the case plan, complimented her progress, continued services, and found a substantial probability the child would be returned to her within six months." (*In re T.G.*, *supra*, 188 Cal.App.4th at pp. 692-693.) In contrast, in *In re T.G.*, the father was incarcerated for a parole violation about one month after the disposition hearing. Despite father's request for findings that he had not been provided with visitation or reasonable services during his time in custody, the court found his progress towards alleviating or mitigating the causes necessitating placement were inadequate, and he failed to make substantial progress on the case plan. (*Id*. at p. 691.) *In re T.G.* noted that the court in *Melinda K.* acknowledged "its conclusion would be different if mother was arguing 'some adverse action against her' based on the reasonable services finding. [Citation.] For example, the [*Melinda K.*] court said its determination on the propriety of mother's appeal would be different '[w]here the two findings of reasonable services and detriment are intertwined' and this 'resulted in some negative consequence to the parent.' [Citation.]" (*In re T.G., supra*, at p. 693.)

*In re T.G.* also questioned whether the holding in *Melinda K.* would still be good law in light of *In re S.B.* (2009) 46 Cal.4th 529, where the California Supreme Court reversed a Court of Appeal decision dismissing a mother's appeal on the grounds that mother was appealing the court's adoptability *findings*, rather the an *order* to find an appropriate adoptive family for her children. The Supreme Court disagreed, noting that "review of findings is normally obtained by appeal from the ensuing judgment or order." (*Id.* at p. 534.) "'[W]e have repeatedly held that if the Legislature intends to abrogate the statutory right to appeal, that intent must be clearly stated. "The right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment . . . ." [Citations.]' [Citation.]" (*Id*. at p. 537.)

7

The court in *In re T.G.* reasoned that "a parent or child can b[e] aggrieved by a reasonable services finding at the time of the six-month review hearing if it is not supported by substantial evidence. Such a finding can put the interests of parents and children in reunification at a significant procedural disadvantage." (*In re T.G.*, *supra*, 188 Cal.App.4th at p. 695.) Because reunification services are generally limited to twelve months for children older than three, and a heightened showing is required to extend services to the statutory maximum of eighteen months, "it would be significantly more difficult for a parent to either reunify with a child or to satisfy the heightened showing required for a continuation of reunification services if the parent was not provided with reasonable services during the first six months of the reunification period." (*Ibid.*) In addition, "a parent whose services are terminated at the 12–month review period based in part on an erroneous finding of reasonable services during the first six months of reunification, would be unable to challenge that finding by way of an appeal from a subsequent adverse order at the time of the 12–month review hearing." (*Id.* at pp. 695-696, citing *Melinda K.*, *supra*, 116 Cal.App.4th at pp. 1156-1157; see also *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259 ["a parent may not attack the validity of a prior appealable order for which the statutory time for filing an appeal has passed"].)

We are persuaded by the reasoning and holding in *In re T.G.* that a parent may appeal a reasonable services finding made as part of the court's orders at the six-month review hearing if the finding is adverse to the parent's interest in reunification. Here, because the court's finding meant that father would not have additional time to comply with the case plan, beyond the remaining six months until the twelve-month hearing under section 366.21, subdivision (f), the court's finding has a negative impact on his prospects for reunification. Therefore, we consider the merits of the reasonable services finding on appeal.

**Reasonableness of Reunification Services**

The Department must show by clear and convincing evidence that reasonable reunification services have been provided. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) On appeal, we review the court's finding of adequate services under the substantial evidence standard of review. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) In applying that standard, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) The pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

At the six-month review hearing, the court must determine whether the Department has made reasonable efforts to provide reunification services to father and the extent of his progress toward alleviating or mitigating the causes that led to the Children's detention. (§§ 366, subd. (a)(1)(B), (E); 366.21, subd. (e) [six-month review].) "In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The Department must make a good faith effort to provide reasonable services "responding to the unique needs of each family." (*In re Monica C., supra*, 31 Cal.App.4th at p. 306.) The Department has a responsibility to maintain reasonable contact with the parent, although the evaluation of what constitutes "reasonable contact" can take into account whether the parent was cooperative with such efforts to maintain contact, and whether the parent kept the Department apprised of his or her whereabouts. (*In re T.G., supra*, 188 Cal.App.4th at p. 698.)

9

The law requires the court to consider the particular obstacles faced by an incarcerated parent, including access to court-mandated services. (§ 361.5, subd. (e)(1); see §§ 366.21, subds. (e), (f); 366.22, subd. (a); *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1013 ["the department should, at a minimum, have contacted the relevant institutions to determine whether there was any way to make services available to the father"]; *In re Monica C., supra,* 31 Cal.App.4th at p. 307 [child welfare agency's obligation to provide reasonable services "obviously entails the preliminary task of identifying services available to the (incarcerated) parent"].)

There is substantial evidence that the Department's efforts, while ultimately unsuccessful, were reasonable given the circumstances. The court had informed father of the importance of updating his contact information with the Department. A social worker called father once about two months after the adjudication hearing, and again two and a half months after that. We can infer from the record that father did not update his contact information or return the social worker's phone calls. Although the record is silent on when or how the Department learned of father's imprisonment at North Kern State Prison, its status review report documents the social worker's attempts to identify what services father had available to him in prison. Father claims the Department's efforts to provide reunification services were "mechanical" and it could have done other things, like writing to father or sending him written program materials. However, given father's history of failing to comply with reunification services and his own lack of communication with the Department, we decline to find the dependency court erred in making its reasonable services finding.

**DISPOSITION**

The court's orders are affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


MOSK, J.