Filed 5/9/14  S.K. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| S.K.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN BERNARDINO COUNTY,<br><br>     Respondent;<br><br>SAN BERNARDINO COUNTY<br>CHILDREN AND FAMILY SERVICES,<br><br>     Real Party in Interest. | E060562<br><br>(Super.Ct.Nos. J241843 & J241844)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Christopher B.

Marshall, Judge.  Petition denied.

John N. Vega for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel, and Jeffrey L. Bryson, Deputy County

Counsel, for Real Party in Interest.

1

The juvenile court terminated defendant and appellant S.K.'s (mother) reunification services and set a Welfare and Institutions Code section 366.26 hearing.[1] Mother filed a petition for extraordinary writ contending plaintiff and respondent San Bernardino Children and Family Services (CFS) failed to provide reasonable services and visitation with minors. The petition is denied.

FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2011, while on probation for convictions for child cruelty and possession of a controlled substance, mother was arrested at her home with two other individuals for drug use. Minors J.H., born in 2010, and O.H., born in 2009, were left in the care of father;[2] the arresting deputy noted the home was filthy; there was exposed wiring in the home and drug paraphernalia in minors' room. The deputy informed father the deputy would be back in a week to see if the home had been cleaned. When the deputy returned on November 28, 2011, he arrested father for child cruelty, possession of controlled substances, and maintaining a place for the use or sale of controlled substances; the home had not been cleaned and another individual under the influence of methamphetamine was arrested at the home. Father reported he "[had] been smoking meth since Thanksgiving Day."

The reporting party noted law enforcement had been to the home between 15 and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father's reunification services were also terminated by the juvenile court; however, father is not a party to the instant petition.

20 times in the past six months regarding reported drug trafficking. Father had a previous criminal history which included controlled substance violations and domestic violence. Mother had a criminal history including over a dozen arrests, some for controlled substance violations. Parents had numerous prior unsubstantiated CFS referrals for emotional abuse, caretaker incapacity, and general neglect beginning in April 2009. A prior case had been opened on March 11, 2010, when minor J.H. was born testing positive for methamphetamine. Both minors had been removed from parents' custody, but were returned on May 26, 2011, when the family stabilized and the case was dismissed.

In the instant case, minors were detained and later placed on December 14, 2011, in the custody of the foster parents with whom minors had been placed in the previous dependency proceeding.[3] Father admitted mother hits him. Mother was incarcerated and not expected to be released until March 4, 2012. Mother was eventually released from custody on January 20, 2012, and given instant referrals to Inland Valley Recovery Services (IVRS) (substance abuse counseling), bilingual counseling, and random drug testing. The juvenile court formally removed minors from parents' custody on January 23, 2012, granting joint visitation of two hours twice a week.

In a status review report filed July 16, 2012, the social worker recommended services be continued for father, but terminated for mother. On January 23, 2012, mother

---

[3] J.H. spent the first 10 months of his life in the foster parents' care during the previous proceedings. O.H. had spent eight months in their care during the previous proceedings.

requested a change of location referral for IVRS from Upland to San Bernardino; CFS complied. On February 2, 2012, mother requested another change of location referral for IVRS; CFS issued a new referral on February 8, 2012. Mother had eight visits with minors. J.H. was reportedly resistant to affection from mother, but mother would force him to kiss and hug her.

On February 19, 2012, mother was again arrested for possession of a controlled substance and a parole violation. Mother reported police had planted the methamphetamine in her bag. Mother was released from jail on June 12, 2012, and admitted to a 90-day New House Residential substance treatment program. Mother testified positive for methamphetamine in the program on July 15, 2012. Mother failed to show up for random testing on July 16, 2012. Mother had been visiting with minors four hours weekly.

On August 20, 2012, the juvenile court found mother had failed to participate regularly and make any progress in her case plan, there was no probability of return of minors to mother, and the court ordered mother's reunification services terminated. The court ordered one-hour weekly visits for mother.

In a status review report filed January 16, 2013, the social worker recommended father continue to receive reunification services. Mother apparently had one and a half hour weekly visits with minors. It was noted minors disliked mother's expressions of physical affection. The juvenile court continued father's reunification services.

On March 12, 2013, mother filed a section 388 petition requesting reinstatement of reunification services and liberalization of visitation. Mother had completed 150 days in

4

the New House Residential Treatment Program on November 7, 2012. She had completed IVRS's Alcohol and Drug Outpatient Program on February 5, 2013. Mother tested negative for all illicit substances five times between November 7, 2012, and January 22, 2013. She had attended ten 12-step meetings between January 30, 2013, and February 5, 2013. Mother had been living in Stay Free Ministry's Sober Living Program since November 7, 2012.

In CFS's response filed April 5, 2013, the social worker recommend mother's reunification services be reinstated. A letter from J.H.'s therapist on April 9, 2013, reflected that his visits with mother had caused a regression in his behavior and triggered his posttraumatic stress disorder (PTSD). On April 10, 2013, the juvenile court granted mother's petition, reinstated her reunification services, and granted her two hours of weekly visitation with minors.

On April 25, 2013, the juvenile court granted CFS's request that father have three overnight visits a week. Mother was not to attend the visits. In a status review report filed May 17, 2013, the social worker recommended minors be returned to father's custody with family maintenance services. The social worker recommended mother continue to receive reunification services. Mother had been referred to individual and couple's therapy. Mother provided a letter dated April 9, 2013, indicating she had been participating in therapy sessions at New House with IVRS; however, the letter failed to indicate in how many sessions she had participated. O.H. reported that mother had attended their unsupervised visits with father.

At the scheduled section 366.22 hearing on May 28, 2013, minors contested CFS's

recommendation. The juvenile court discontinued overnight visits with father and ordered four-our weekly unsupervised visits with father at CFS's offices. Documentation provided on July 17, 2013, reflected parents attended six sessions of couple's therapy beginning on May 29, 2013. Mother drug tested negatively three times between June 12, 2013, and July 12, 2013.

The contested section 366.22 hearing began over the course of three days on July 19, 22, and 23, 2013. Father testified he was still on probation, that mother had not lived in his home since February 2013, that mother was not in the home during his unsupervised visits, and he had attended couple's counseling every Wednesday since May 29, 2013, with mother, missing only one appointment.

Mother testified she had spent three nights at father's house during the past weekend, she had a 20-year drug history, and she has now been sober for the longest period in her life, just over a year. She admitted that at the time minors were most recently taken from her home, she had been selling drugs out of the home. Mother attended Alcoholics Anonymous meetings five days a week and had previously participated in individual counseling, but no longer did so. Mother admitted committing domestic violence against father in front of J.H. Mother had been participating in domestic violence counseling.

The social worker testified she had been assigned to the case on May 21, 2012. O.H. had reported to her that mother was in father's home during father's unsupervised visits, including the overnight visits during which mother slept on the floor. J.H.'s primary attachment was to the foster parents. J.H. did not want to visit father;

6

nevertheless, the social worker recommended returning minors to father's custody with family maintenance services. The social worker had never before made such a recommendation in a case under similar circumstances.

Mother's last positive drug test was in July 2012. Mother had weekly visitation with minors during the past year, missing between five to 10 visits for which she had called in sick in advance. Mother was not currently in individual counseling. Mother had engaged in six couple's therapy sessions with father. Mother had current weekly visitation with minors for an hour and a half. The social worker wanted mother to participate in individual therapy, couple's therapy, and drug testing.

The juvenile court continued trial on the matter for 90 days. The court ordered supervised joint visitation with parents two hours twice weekly. Mother was to start parent-child interaction therapy (PCIT).

On September 26, 2013, the juvenile court granted CFS's request that parents receive unsupervised visitation with minors three times a week for four hours and three overnight visits a week. In an Addendum Report filed October 16, 2013, the social worker recommended minors be returned to parents' custody with family maintenance services. The social worker noted parents had made progress in PCIT and substance abuse treatment. Mother had completed 16 sessions of aftercare. The social worker logged 37 visits between minors and parents. Nonetheless, minors reported they wanted to live with foster parents; minors experienced stress both before and after visits with parents.

At the continued section 366.22 hearing on October 17, 2013, the juvenile court

authorized continued unsupervised, extended, and overnight visits between parents and minors. The court noted mother had been reported to have struck father during one of the visits. The court continued the matter to December 16, 2013.

On November 21, 2013, minors' counsel filed a section 388 petition requesting termination of unsupervised and overnight visits. Minors reported parents were yelling and fighting during visitation; mother had hit father on more than one occasion in front of minors; J.H. reported being hit by mother; minors reported father had hit their paternal grandfather. O.H. had regressed since unsupervised visitation began and was experiencing enuresis. Minors' therapist noted mother "appears to have a limited emotional connection and attachment and limited physical bond" to minors. CFS filed a response supporting minors' petition. On November 26, 2013, the court suspended unsupervised visitation and ordered supervised visits once weekly for an hour.

In a letter dated December 12, 2013, J.H.'s therapist reported that J.H.'s PTSD was in remission prior to the juvenile court's order of unsupervised visitation. Since unsupervised visitation began, J.H. had incurred significant sleep dysregulation, hypersensitivity, high levels of anxiety, avoidance, depression, anger, and disassociation: "I am concerned that parental visitation is detrimental to his functional status and the ability for gains to be made in recovery."

In an Interim Review Report filed December 16, 2013, the social worker recommended parents' reunification services be terminated. Mother had been attending individual therapy from July 31, 2013, through November 27, 2013, but was terminated from therapy after missing five sessions.

On December 18, 2013, minor's counsel filed a duplicate section 388 petition which removed her personal declaration and moved to withdraw the previous petition due to mother's counsel's intent to call minors' counsel as a witness. On the same date, mother filed a substitution of attorney. Mother's counsel indicated he needed time to "be brought up to speed" and to "obtain transcripts" of the trial. The juvenile court granted the motion to substitute counsel and continued the matter to January 24, 2014.[4]

A report filed January 24, 2014, reflected O.H. wanted to continue to visit with parents, but remain living with the foster parents. On the same date, mother's counsel indicated he had obtained items which he was required to give as discovery to other counsel in the case. The juvenile court granted the foster parents' application for de facto parent status, ordered discovery released to the de facto parents, and continued the matter to January 29, 2014.

The continued contested section 366.22 hearing was held on January 29, 30, 31, and February 3, 2014. The juvenile court found that reasonable services had been offered parents beyond the statutory time frame. It found there was no more time for continuing reunification services, terminated parents' reunification services, and set the section 366.26 hearing.

## DISCUSSION

Mother contends CFS failed to provide "some continuity of family therapy." In addition, mother maintains that "the virtual suspension of visits which occurred based

---

[4] The minute order reflects that minors' counsel withdrew the filing of both section 388 petitions.

upon continuing negative reports of the foster parents who may have had their own agenda, doom[ed] the prospect of re[un]ification for the parents." Thus, mother argues insufficient evidence supported the juvenile court's order that CFS had provided reasonable services. We disagree.

"'The paramount goal in the initial phase of dependency proceedings is family reunification. [Citation.]' [Citation.] 'At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child.' [Citation.] Reunification services must be 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' [Citation.] Accordingly, a reunification plan must be appropriately based on the particular family's 'unique facts.' [Citation.] 'Absent a finding of detriment, even incarcerated parents are entitled to reasonable reunification services, whatever the likelihood of success. [Citations.] Visitation is a critical component, probably the most critical component, of a reunification plan. [Citations.]' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 696-697.)

CFS "'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether

10

the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence. [Citation.]' [Citation.]" (*In re T.G., supra,* 188 Cal.App.4th at p. 697)

Here, substantial evidence supported the juvenile court's determination that CFS had provided reasonable reunification services to mother. Mother had been granted visitation in the instant case even before she was initially released from jail. Subsequent to her initial release, mother engaged in two-hour, twice weekly visitation with minors. After release from her second arrest, mother engaged in visitation with minors on a regular basis of four hours weekly. After mother's reunification services were initially terminated, mother continued to engage in an hour to an hour and a half of visitation weekly. After reinstating mother's reunification services, mother began two-hour weekly visitation with minors. The juvenile court later granted father unsupervised, overnight visits at which mother was not to be present; nevertheless, O.H. reported minor had been present at the unsupervised visits with father, even sleeping at the home during overnight visits. Regardless, the juvenile court ordered joint visitation two hours twice weekly in addition to PCIT therapy between mother and minors.

Thereafter, parents were granted four-hour unsupervised visitation weekly and three overnight visits weekly. Only upon minors' reports of domestic violence during the unsupervised visitation were unsupervised and overnight visits terminated. Supervised visits continued thereafter. Thus, CFS offered mother appropriate visitation with minors.

The termination of unsupervised visitation was not based solely on the purported biased reports of the foster parents, but also on the minors' reports to the social worker

11

and therapist. J.H. had been placed with foster parents in the first dependency proceeding in March 2010, when he was five days old and was returned on May 6, 2011. O.H. had been placed with foster parents in May 2010, when he was 16 months old and returned to parents' custody on May 6, 2011. Both minors were subsequently placed with foster parents again on December 14, 2011, where they remained on the day mother's services were terminated.

There were repeated indications minors were uncomfortable with physical affection from mother. Yet, mother forced physical affection upon minors, even testifying she had taken a shower naked with O.H. a couple of times in order to bond with her. The social worker testified mother told her she had showered with both minors. Minors regressed when visiting with mother; mother violated boundaries which triggered minors' past trauma symptoms.

As the social worker noted in one report, "It has been two years since the children were detained the second time and the parents have received 24 months of services. Services have included individual therapy, substance abuse treatment and testing, couples counseling, PCIT, [and] parenting . . . ." "Although the parents have been successful in the completion and participation of services they have demonstrated very little benefit from the services and skills acquired outside of the therapeutic setting. For example, although the mom was prompted to implement appropriate physical touch by the PCIT therapist to only include high fives and placing her hand on shoulder or a touch on the leg and the mother agreed that this was the best course of action, she self reported . . . that she showered with the children during the unsupervised visit." O.H. "display[ed] limited

attachment and limited emotional connection with" mother. Thus, mother's failure to abide by proper protocol with minors during visitation resulted in an appropriate reduction in visitation.

The social worker testified parents were provided individual counseling, couple's counseling, parenting classes, substance abuse treatment referrals, domestic violence counseling, and joint PCIT therapy with minors. Nevertheless, "at this time there appears to be minimal progress towards enhancing the bond between [O.H.] and mom as well as [J.H.] and mom." Mother "appears to have a limited emotional connection and attachment and limited physical bond" with minors. Mother was terminated from individual counseling due to her lack of attendance. The social worker testified "The children are not bonded to the parents. The parents have not benefitted from the services. Each time we go to unsupervised and even out of unsupervised visits, incidents are being reported from the children to the caretakers that shows that the parents are displaying inappropriate behavior in front of the children. [¶] I don't think that the parents are protective. I don't think Dad can protect the children from Mom's behavior."

Minors' licensed clinical therapist testified that despite having completed 15 PCIT sessions with minors, mother had made minimal progress toward enhancing her bond with minors. The therapist opined it would not be beneficial for mother to go forward into phase two of the PCIT. She opined it would be emotionally harmful and detrimental to remove minors from the foster parents' care. Mother herself testified she was not ready to have minors returned to her custody.

13

As the court noted "There were a wide variety of in-depth services provided that did not stop on November 26th, but continued to be provided to the parents." Those services had been provided beyond the statutory time frame. (Section 361.5, subd. (a)(4) ["[C]ourt-ordered services may be extended up to a maximum time period not to exceed 24 months after the date the child was originally removed from physical custody of his or her parent or guardian . . . ."].) At the time the juvenile court terminated mother's reunification services, minors had been out of mother's custody in the instant case for over 26 months. Substantial evidence supports the juvenile court's determination CFS offered reasonable services to mother.

DISPOSTION

Mother's petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____<br>J.

We concur:

RICHLI _____
          Acting P. J.


KING _____
                    J.