Filed 12/23/15  E.V. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| E.V., | |
| Petitioner, | E064335 |
| v. | (Super.Ct.No. SWJ1400719) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | O P I N I O N |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Timothy F. Freer, Judge.  Petition denied.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, and James E. Brown, Guy B. Pittman, and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

On August 31, 2015, the juvenile court terminated defendant and appellant, E.V.'s (Mother), reunification services as to minors I.V. (born March 2008), H.V. (born April 2010), and L.V. (born February 2013) (collectively the minors). On appeal, Mother contends the court did not order some of the services of which her failure to complete formed the basis upon which plaintiff and respondent, Riverside County Department of Public Social Services (the department), recommended termination of her services. Mother further argues the department failed to provide referrals for other services which were ordered, but which Mother did not complete. Mother also maintains the court failed to make an express finding that the department offered reasonable reunification services. Finally, Mother contends insufficient evidence supported the court's order suspending and terminating her visitation with the minors. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The department received four separate referrals pertaining to Mother and the minors on May 26, June 5, August 29, and September 3, 2014. The referrals alleged the parents were using drugs,[1] the parents had spent time in prison, Mother left the miniors outside on the streets late at night unsupervised for months, that drugs were being sold from the home, and that the home was littered with feces and cockroaches. Law

---

[1] Father is not a party to the petition.

2

enforcement had apparently responded to the home four times between April 23 and May 24, 2014.

On September 5, 2014, a social worker met with one of the minors and a speech therapist at the minor's school. The therapist expressed concerns with Mother and noted that the minor often appeared dirty, without underpants, and with mismatched shoes.

That same day, the social worker met with Mother. Mother informed the social worker that she had a temporary restraining order against the father for verbal and mental abuse. Mother had a hearing scheduled to make the restraining order permanent. An officer with the social worker conducted a drug field test on Mother and noted symptoms that she was under the influence of a controlled substance. He arrested her. Mother admitted drug use within the past week and tested positive for methamphetamine. Mother was released later that day and brought the minors to the department's office.

L.V. had several suspicious marks on her body. All "the children appeared like they had not eaten in days as they snacked continuously and drank multiple juice boxes." Mother had an extensive prior history with the department and an extensive criminal history. The social worker recommended Mother participate in services, including random drug testing, individual and family therapy, and a parenting program.

The court detained the minors on September 10, 2014. It adopted the social worker's recommendations, which included services such as alcohol and drug testing, substance abuse treatment, parenting education, and counseling.

On September 22, 2014, Mother reported physical abuse by the father in front of the minors. Mother visited with the minors twice during the reporting period; a third visit was canceled when Mother showed up late. Mother refused to engage in any services unless and until the juvenile court took jurisdiction over the minors.

In an addendum report filed October 27, 2014, H.V. alleged Mother's friend had touched her and I.V. on the bottom. H.V. said the friend threw her on the couch. School personnel observed I.V. to be filthy all the time and always late or absent from school. The minors told the foster parent Mother would keep I.V. home from school so that he could babysit the minors while Mother slept. Mother refused to provide the social worker with her current address in an interview on October 16, 2014. The social worker noted: "I attempted to review [Mother's] case plan with her; however, . . . [M]other refused to review her case plan and stated that her goal is to contest the hearing and get her children back into her care. She also said that she will read the case plan later but at this time she is not agreeing with anything."

The social worker filed an addendum report on November 17, 2014, in which she noted that Mother had "failed to make herself available to the [d]epartment and it appears that she has no initiative to begin services, as she has not begun a single component of her case plan." The social worker's telephone calls and text messages to Mother went unanswered. Mother was often late to visits, resulting in cancellations; Mother also often left visits early.

4

I.V. and H.V. now reported that Mother's boyfriend hit them and threatened to cut them in front of Mother. Mother reportedly would not do anything. The minors also reported the boyfriend would tape their mouths to keep them quiet and bound I.V.'s hands and legs. Mother continued to refuse to provide the social worker with her current address.

On November 20, 2014, the juvenile court sustained the petition, removed the minors, and ordered the department to provide reunification services as set forth in the case plan. The department filed a subsequent juvenile dependency petition on February 3, 2015, alleging acts of sexual and physical abuse by Mother's boyfriend.

In the subsequent detention report filed on February 3, 2015, the social worker relayed that I.V. disclosed that Mother's boyfriend had hit him with a belt, tied him up, and touched him sexually. H.V. reported that Mother's boyfriend tied her up and touched her sexually as well. The minors reported that Mother's boyfriend taped their mouths, legs, arms, and genatalia. He threatened to kill them with a knife and hit them with a belt. Mother's boyfriend touched their anuses. I.V. reported that Mother's boyfriend put his finger inside I.V.'s anus. H.V. reported that Mother's boyfriend put his finger "way in." The minors reported that they had informed Mother of what had happened but that she did not care.

On January 2, 2015, the social worker had spoken with Mother, who agreed to come to the office to discuss the allegations, but Mother failed to show. Subsequent attempts to reach Mother were unavailing. Mother had yet to start counseling, a domestic

violence program, parent education, or random drug testing. On February 4, 2015, the juvenile court detained the minors on the subsequent petition.

In the jurisdiction and disposition report filed February 24, 2015, the social worker recommend Mother's reunification services be terminated because Mother's parental rights had previously been terminated as to one of the minor's siblings. (Welf. & Inst. Code, § 361, subd. (b)(11).) The social worker also recommended that Mother's visitation with the minors be terminated. Mother visited sporadically with the minors and when she did show, she often left early. I.V. reported that during one visit, Mother said her boyfriend would kill the foster parents and have sex with I.V. and kill him. I.V. had drawn a picture for Mother for Christmas which, during a visit, Mother smashed in front of I.V. and threw away. I.V. did not wish to visit with Mother. H.V. likewise reported that she did not wish to visit with Mother as Mother had hurt her and H.V. did not love or trust Mother.

Mother had not participated in any services. Mother had provided the social worker with an address for mailing, but refused to provide her current address. Mother had last been interviewed on October 1, 2014. The social worker left several voice mails for Mother, none of which were returned.

On February 27, 2015, the court denied the social worker's request to suspend Mother's visitation. In an addendum report filed May 6, 2015, the social worker noted she had received a call from Mother on April 15, 2015, during which Mother reported having enrolled in individual counseling and parenting classes and monthly drug testing.

6

The social worker received a letter noting that Mother had attended three therapy sessions and was enrolled in a parenting class.

On May 5, 2015, the social worker spoke with Mother's therapist, who reported Mother had started counseling and parenting classes on March 2, 2015, but that her attendance was sporadic. Mother had attended three of seven parenting classes and five or six counseling sessions. Mother often failed to show or was 20 minutes late. As of May 4, 2015, Mother had stopped attending the parenting classes.

Mother had not visited with the minors during the reporting period. Mother was asked to call ahead to confirm visits because she was either late or failed to show. Mother failed to call ahead for any scheduled visits. I.V. stated he did not wish to see Mother. Mother continued to refuse to disclose her current address.

In the May 7, 2015, six-month status review report, the social worker observed that Mother "is inconsistent with her communication with the [d]epartment and is mostly absent; thereby, failing to respond to phone calls, voice mail messages[,] or letters with request[s] for information as to her services and progress in her case plan." "During this status review period, [Mother] has not made herself available to the [d]epartment to participate in ongoing substance abuse testing services." "This social worker or another [department] [s]ocial [w]orker had contact in person, by telephone, or through written correspondence with . . . [M]other on the following dates in order to provide resources/referrals and to assess her progress in case plan services: 4/15/15, 2/20/15, 1/16/15, and 10/15/14. [Mother] has not been in contact with the [d]epartment for the

7

majority of this status review period." Mother had not enrolled in a substance abuse treatment plan, domestic violence program, or coparenting class. Mother had only participated in five therapy sessions.

On May 21, 2015, the juvenile court suspended Mother's visitation. In an addendum report filed July 6, 2015, the social worker noted Mother refused to provide any information regarding her participation in services except through her attorney. Mother had "not made herself available to our service providers, including refusal of drug testing, and continually lacking cooperation with the [d]epartment during this review period. As previously presented to the Court, she stated she wanted her own service providers, and has been consistently non-compliant with the request of the [d]epartment and the orders of the Court."

Both I.V. and H.V. continued to indicate they did not wish to visit with Mother. On March 19, 2015, I.V. informed the social worker that Mother told him, referring to the foster parents, that "Grandpa and Grandma are the FUCK," and "your Grandpa sucks a man's dick," and Grandma sucks [L.V.]'s Pussy." Mother also told I.V. Mother's boyfriend had been walking by their home and that when they were sleeping Mother would come into I.V.'s room and cut off his penis. On July 9, 2015, the court continued suspension of Mother's visitation.

In an addendum report filed August 7, 2015, the social worker had received additional referrals wherein I.V. alleged the father took pictures of he and his siblings' genatalia, fellated I.V., and would put his finger inside his sister's vagina. Mother had

8

been arrested for check cashing fraud on June 26, 2015. Mother alleged that another man had also molested I.V., but that she had never previously reported the abuse. Riverside County Child Abuse Team interviews conducted with I.V. and H.V. on July 15 and 16, 2015, were consistent with the physical and sexual abuse allegations the minors had made against the father and Mother's boyfriend.

In an addendum report filed August 26, 2015, the social worker noted: "During the majority of this case, [Mother] has had no communication with the [d]epartment and has not made herself available to participate in services. She told the [d]epartment that her attorney advised her not to speak with us. Additionally, [Mother] advised the [d]epartment that she would be completing her own services; however, she has not provided the [d]epartment with any consistent contact information or service provider information which could be verified." Mother "stated that she did not need or want any referrals for services as she would not be completing the [d]epartment's services." "On July 5, 2015, [Mother] notified the [d]epartment that she was choosing to use her own private insurance to pay for the services which she would select independent of the [d]epartment."

On August 31, 2015, the date scheduled for the contested jurisdiction and disposition on the subsequent juvenile dependency petition, the department chose not to proceed on the subsequent petition. The subsequent petition was dismissed without prejudice. A six-month review hearing proceeded on the original petition as amended. Mother testified she had completed a home parenting class twice and was about to

9

receive a parenting certificate. Mother had not received any referrals from the social worker despite Mother's repeated calls; Mother alleged the social worker failed to return any of Mother's calls. Mother had not visited the minors since March 2015. The juvenile court terminated Mother's reunification services and continued suspension of Mother's visitation with the minors.

## II. DISCUSSION

### A. *Services Orders*

Mother contends the juvenile court never ordered that she participate in domestic violence services or coparenting education. Therefore, to the extent the court's order terminating her reunification services was based on Mother's failure to complete these services, Mother maintains the court's order must be reversed. We disagree.

The department "'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence. [Citation.]' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 697 [Fourth Dist., Div. Two].)

The record clearly reflects the court ordered that Mother participate in both a domestic violence program and coparenting classes. The case plan approved and adopted by the juvenile court reflects that Mother was to "attend Alternatives to Domestic Violence . . . ." Likewise, the case plan reflected that "[t]he parents will participate in, and successfully complete, a co-parenting education program to address their parenting issues and learn to co-parent." Thus, sufficient evidence supports the court's order terminating Mother's reunification services with respect to Mother's failure to participate in or complete domestic violence services and coparenting classes ordered.

B. *Referrals*

Mother contends the department's social worker did not provide referrals for domestic violence services, individual counseling, coparenting education, or drug testing such that the court's implicit order finding that reasonable services were provided was not supported by substantial evidence. We disagree.

Here, sufficient evidence supports the court's inherent determination that the department offered referrals for the services ordered by the court. In a report filed on May 7, 2015, the social worker noted: "This social worker or another [department] [s]ocial [w]orker had contact in person, by telephone, or through written correspondence with . . . [M]other on the following dates in order to provide resources/*referrals* and to assess her progress in case plan services: 4/15/15, 2/20/15, 1/16/15, and 10/15/14." (Italics added.) The social worker further observed that "the previous social worker mailed a letter to . . . [M]other to obtain treatment and service updates and *contact*

11

*information for service providers* regarding progress in these case plan services." (Italics added.) In the addendum report filed on August 26, 2015, the social worker noted that Mother "has been provided with Case Management services throughout the length of this case, which included facilitated visits, *service provider referrals*, verification of services, and phone contact with [Mother] to provide service and Court updates." (Italics added.) Thus, the record reflects Mother was offered referrals to all the services ordered in her case plan.

More specifically, the social worker noted Mother "has failed to participate in Random and On-Demand Substance Abuse Testing spanning the last 10 months through Sun Ray Addictions in Hemet." Mother later testified: "I have gone to Sun Ray where I know that they do their drug testing, or that's where—what I'm aware of." Thus, it is apparent Mother had received a referral for drug testing and was aware of where that drug testing was conducted. Moreover, the social worker later reported that "[o]n August 26, 2015, [Mother] was *re-referred* for Random Substance Abuse Urine Testing through Sun Ray Addictions in Hemet." (Italics added.) Thus, Mother received at least two referrals for drug testing.

With respect to domestic violence services, counseling, and parenting classes, the social worker reported that "[o]n August 26, 2015, a Referral was completed and [Mother] was referred to Domestic Violence classes, Individual Counseling services[,] and Parenting Education classes." As regards parenting classes, Mother testified that she took a course that appeared on the department's referral list. Thus, substantial evidence

12

supports a determination that Mother received referrals for each of the court-ordered services.

Assuming, arguendo, that Mother did not receive service referrals, it is obvious from the record that Mother was to blame because she was extremely uncooperative with the department. The record is replete with notations that Mother failed to show for scheduled meetings, refused to participate in services, refused to provide a current address, refused to go over her case plan, and failed to return numerous telephone calls and text messages. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233 ["'It is . . . well established that "[r]eunification services are voluntary, and cannot be forced on an unwilling or indifferent parent. [Citation.]" [Citation.]' [Citations.]"].) The social worker noted that Mother "has not made herself available to our service providers, including refusal of drug testing, and continually lacking cooperation with the [d]epartment . . . ."

Mother "stated she wanted her own service providers, and has been consistently non-compliant with the requests of the [d]epartment and the orders of the Court." Mother "stated that she did not need or want any referrals for services as she would not be completing the [d]epartment's services." Mother "notified the [d]epartment that she was choosing to use her own private insurance to pay for the services which she would select independent of the [d]epartment." Mother "advised the [d]epartment that she would be completing her own services; however, she has not provided the [d]epartment with any consistent contact information or service provider information which could be verified."

13

Thus, to the extent Mother did not receive referrals, it is evident this was because Mother refused to accept them.

Finally, although Mother testified she received no service referrals from the department, the court found Mother's testimony lacked credibility both in and of itself and when examined in the context of the record as a whole. The court found Mother's testimony "very suspect at the very least" and "problematic." "[T]here is really nothing to dispute what the social worker has put in her report . . . ."

As discussed above, the evidence established Mother did receive service referrals. Moreover, Mother initially testified she had gone to the location where the department referred people for drug testing. This conflicts with her testimony that she received no referrals. Likewise, Mother testified she took a parenting course from a list provided by the department. Thus, Mother's own testimony provided substantial evidence that she did receive service referrals.

C. *Express Order on Reasonable Services*

Mother contends the court's failure to make an express oral statement on the record that it found the department had provided reasonable services requires reversal. We disagree.

Where parents are not prejudiced by the lack of an express determination that reasonable reunification services were provided, such a determination can be implied on the record. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 84-85.)

14

Here, the minute order reflects that the court found the department "has complied with the case plan by making reasonable efforts to return [the minors] to a safe home through the provision of reasonable services designed to aid in overcoming the problems that led to" removal. Nevertheless, nothing in the reporter's transcript reflects the court expressly made such a finding. (*People v. Beltran* (2013) 56 Cal.4th 935, 945, fn. 7 [the resolution of a conflict between the clerk's transcript and the reporter's transcript must be determined by consideration of the circumstances of each case].) Regardless, there is abundant evidence, as discussed above, to support an implied finding by the court that the department offered reasonable services. Mother suffered no prejudice from the lack of an express finding and failed to object on that basis below.

D. *Suspension of Visitation*

Mother contends that insufficient evidence supported the order terminating her visitation with the minors. We disagree.

"[V]isitation with the parent is a mandatory element of the reunification plan with the single exception that '[n]o visitation order shall jeopardize the safety of the child.' [Citations.] In other words, when reunification services have been ordered and are still being provided . . . some visitation is mandatory unless the court specifically finds any visitation with the parent would pose a threat to the child's *safety.*" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491, fn. omitted.) "This strict legislative limitation on suspending or denying all parental visitation during the reunification period is no accident: Without visitation of some sort, it is virtually impossible for a parent to achieve

15

reunification. [Citations.]" (*Ibid.*) We review an order terminating visitation for substantial evidence of detriment to the child's overall well-being. (*Id.* at p. 1492; but see *In re J.N.* (2006) 138 Cal.App.4th 450, 459 [order denying parental visitation is reviewed for abuse of discretion].)

Here, the court's orders suspending Mother's visitation with the minors were supported by substantial evidence. Even early on, Mother missed visits with the minors, showed up late to others, and left early. Eventually, due to Mother's no-shows and tardiness, the department required that Mother call to confirm visitation. Thereafter, Mother did not visit with the minors because Mother failed to make any confirmatory calls.

At one visit, Mother smashed and threw away a picture I.V. had drawn for her. Neither I.V. nor H.V. wanted to visit with Mother. Mother told I.V. during one visit that Mother's boyfriend would have sex with him, kill him, and kill the foster parents. This is particularly troubling considering the allegations that Mother's boyfriend had previously sexually molested the minors. Mother also told I.V. the foster parents were homosexuals. Mother herself threatened to come into I.V.'s room and cut off his penis. Thus, substantial evidence supported the court's inherent determination that visitation would be detrimental to the minors' overall well-being.

## III. DISPOSITION

The petition is DENIED. The stay imposed by order of this court on December 17, 2015, is LIFTED.

16

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
                                                    J.


We concur:

HOLLENHORST
            Acting P. J.

MILLER
                J.