Filed 9/16/22 B.A. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| B.A.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | F084610<br><br>(Super. Ct. Nos. 19CEJ300296-1, 19CEJ300296-2, 19CEJ300296-3)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Elizabeth Egan, Judge.

Olga Saito for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Carlie Flaugher, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

[*]    Before Smith, Acting P. J., Snauffer, J. and DeSantos, J.

9.

B.A. (mother) seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] terminating her reunification services and setting a section 366.26 hearing for October 12, 2022, as to her now six-year-old son, Mark, Jr., three-year-old daughter, J.A., and two-year-old son, Jose A. Mother contends the juvenile court erred in finding the Fresno County Department of Social Services (department) provided her reasonable reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

*Removal and Services*

In April 2021, a sheriff's deputy placed a protective hold on then five-year-old Mark, Jr., 19-month-old J.A., and nine-month-old Jose because mother was using marijuana and cocaine, neglecting the children's medical needs, and engaging in domestic violence with Mark A., Mark, Jr.'s presumed father, in the children's presence. The department considered Mark to be the alleged father of the younger children. The children were placed together in foster care.

The juvenile court ordered the children detained, offered mother parenting classes, substance abuse, mental health and domestic violence assessments, and random drug testing. The court offered Mark the same services as to Mark, Jr., and ordered reasonable supervised visits for the parents. At the jurisdictional/dispositional hearing on May 10, 2021, the court exercised its dependency jurisdiction and ordered the parents to complete the services previously offered as a reunification services plan. The court set the six-month review hearing for November 8, 2021.

In September 2021, mother gave birth to Mia and named Jesus A. as the father. The department was unaware mother was pregnant.

---

[1]    Rule references are to the California Rules of Court.

[2]    Statutory references are to the Welfare and Institutions Code.

In October 2021, the department filed a motion for a hearing to terminate Mark's reunification services for noncompliance. A hearing on the motion was scheduled for November 8, 2021, the date set for the six-month review hearing.

*Six-Month Review*

On October 28, 2021, the department filed the six-month review report, recommending continued services for mother. Mother had successfully completed a parenting class and the assessments. Although she did not require mental health therapy, she was referred for intensive outpatient substance abuse treatment and a 26-week domestic violence program. She attended 38 of the 48 required classes for the substance abuse program and completed the domestic violence course on November 24, 2021. She participated regularly in random drug testing and tested positive for cannabinoids from May to July 2021 and twice in September for opiates. She denied using marijuana and could not account for her positive test results. She provided a prescription to excuse her positive result for opiates. She was scheduled to begin unsupervised visitation on October 24.

On November 8, 2021, the juvenile court set a contested six-month review hearing at Mark's request. The matter was set for January 10, 2022.

Meanwhile, on December 18, 2021, mother was arrested for carrying a loaded firearm in public, having a concealed firearm in her vehicle, child abuse and endangerment, criminal threats, and reckless driving under the influence after she and Jesus were engaged in a domestic violence incident and she chased him in her vehicle while he had Mia in his car. Mother crashed her vehicle into a fence. Mia was taken into protective custody.

On December 23, 2021, Daniel Seguenza, the social worker assigned to mother's case, filed an ex parte application to reduce mother's visitation to supervised visits. The juvenile court made an interim order on January 10, 2022, granting the request. The court set a jurisdictional/dispositional hearing (combined hearing) as to Mia for

February 7, 2022, and a contested six-month review hearing as to the other children on March 21, 2022.

On February 7, 2022, Jesus appeared and the juvenile court appointed him counsel. The court continued the combined hearing to February 9, 2022. None of the parents appeared at the hearing on February 9. Mother's attorney informed the court mother was in quarantine at the county jail. The court adjudged Mia a dependent child, ordered mother to participate in reunification services and set a six-month review hearing for July 2022.[3] The court denied Jesus services because he was an alleged father. The court granted the department's request to reduce mother's visits to supervised visitation, and continued the contested six-month review hearing to March 21, 2022.

Mother was released from custody on February 14, 2022. She was convicted of the charges filed as misdemeanors and placed on four years of probation.

Neither parent appeared at the hearing on March 21, 2022, and Mark's attorney withdrew his request for a contested hearing. Mother's attorney advised the juvenile court that mother previously submitted on the recommendation to continue her reunification services. The court found the department provided the parents reasonable reunification services and that mother made significant progress, and Mark made no progress. The court terminated Mark's reunification services but continued mother's services to the 12-month review hearing, which the court set for May 2, 2022.

*12-Month Review*

Sometime in April 2022, Seguenza resigned from his employment with the department and social worker Elia Lopez took over the case. She prepared the department's report for the 12-month review hearing and recommended the juvenile court terminate mother's reunification services and set a section 366.26 hearing to implement a permanent plan of adoption. The children remained together in foster care.

---

[3]     There is no further mention of Mia's case.

4.

According to the report, mother did not inform Seguenza that she was released from custody until March 17, 2022. Seguenza attempted to contact her to update referrals for her but was unsuccessful because she had a new phone number and address, which she had not provided to the department. However, referrals for services had already been initiated for her and on March 7, 2022, she began a parenting class. Seguenza also submitted a visitation referral for mother and she began virtual visits with the children.

*Contested 12-Month Review Hearing*

The 12-month review hearing was conducted as a contested hearing on June 29, 2022. Social worker supervisor Tina Phetphouvong testified Seguenza conferred with Lopez about mother's case before he resigned. He did not refer mother for services through the county jail because none were offered that met the county's requirements. Phetphouvong could not find anything in his notes to indicate he offered mother visitation. Once mother contacted Seguenza in March, he provided her updated referrals. She did not know if Seguenza contacted mother while she was incarcerated and she did not recall reading that he did in his notes. Seguenza had to have spoken to mother to get the information to complete the referrals. He also told Phetphouvong that he had spoken to mother. Phetphouvong knew that Seguenza submitted service referrals for mother because Phetphouvong signed off on them. She did not remember when that occurred, but it was sometime after mother contacted him in mid-March.

Lopez testified Seguenza discussed the case with her a little bit before he left. She did not recall if he told her he submitted any referrals. She did not remember asking mother if she received any referrals, but mother told her she was enrolled in a parenting class and told her about all the services she already completed. She first contacted mother on April 21, 2022. She informed mother she had other services to complete and a staffing was scheduled for May 17. At that meeting, mother said she had not been contacted about services. It was possible referrals were submitted for mother and she had not been contacted by service providers yet. Mother was referred for domestic violence,

5.

mental health, and substance abuse assessments. On May 18, mother enrolled in random drug testing, and she attended all of the assessments. She was not referred for mental health or substance abuse treatment but was referred to the 52-week "child abuse intervention … and safe program." Mother was testing negative for drugs and regularly visited the children with no issues. Lopez's recommendation the court terminate services was unchanged even though mother was participating in services. She did not believe mother had learned from the services she already completed.

Mother testified she was contacted once while in county jail by a social worker who informed her Mia had been taken from Jesus's custody. She did not remember the social worker's name. She and the social worker did not discuss visitation and he did not offer her any programs in jail. She did not have visits with the children and was not offered any. She was aware she was assigned a new social worker so she went to the department office the day after her release on February 14, 2022, and was given Seguenza's telephone number. He told her she needed to complete classes but did not specify which ones. He told her "he was going to work on it" and call her back. He never called her back, but Lopez did, although mother could not remember when. Since her release, she completed a parenting class and the assessments in two days. She had an appointment that day for the "child abuse intervention … and safe program" assessment but had to reschedule because she did not have identification. She resumed visitation with the children within approximately three weeks after her release and she visited them twice a week. They ran to her, hugged her, and told her they loved her and wanted to go home.

The juvenile court found it would be detrimental to return the children to mother's custody and there was not a substantial likelihood they could be returned by October 8, 2022, 18 months from their initial removal. The court also found mother was provided reasonable reunification services, terminated them, and set a section 366.26 hearing.

6.

## DISCUSSION

Mother contends the services provided by the department were not reasonable because the social workers did not maintain regular contact with her, unreasonably delayed in initiating referrals, and failed to provide her visitation while in jail.

*Reunification Services Generally*

"The paramount goal in the initial phase of dependency proceedings is family reunification." (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1113.) "The foundation and central, unifying tool in child welfare services is the [reunification] plan. The [reunification] plan must provide for the child's care and case management and must provide services that facilitate both return and, concurrently, permanency." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2020 ed.) Disposition Hearing, § 2.129[4].)

" 'At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child.' [Citation.] Reunification services must be 'designed to eliminate those conditions that led to the court's finding that the child is a person described by [s]ection 300.' [Citation.] Accordingly, a reunification plan must be appropriately based on the particular family's 'unique facts.' " (*In re T.G.* (2010) 188 Cal.App.4th 687, 696.)

At each review hearing, "[i]f the child is not returned to their parent … the [juvenile] court [is required to] determine by clear and convincing evidence whether reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent …." (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).) "The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered

7.

services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult ....' " (*In re M.F.* (2019) 32 Cal.App.5th 1, 14.)

*Appealability*

The juvenile court's finding a parent was provided reasonable reunification services is appealable from the review hearing at which the finding was made. (*In re T.G.*, *supra*, 188 Cal.App.4th at p. 696 [adverse reasonable services finding at the six-month review hearing is appealable.] Failure to timely appeal operates as a forfeiture. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259.)

*Standard of Review*

"A finding that reasonable reunification services have been provided must be made upon clear and convincing evidence. [Citation.] 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact. [Citations.]' " (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.)

"When applying the substantial evidence test, however, we bear in mind the heightened burden of proof. [Citation.] 'Under this burden of proof, "evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." [Citation.]' " (*In re Alvin R.*, *supra*, 108 Cal.App.4th at p. 971.)

*Application*

By the six-month review hearing on March 21, 2022, mother had completed her reunification services, served jail time for her offenses the previous December, and was in contact with Seguenza. She had already started a parenting class, provided him her

updated contact information to initiate referrals for her other services, and was visiting the children virtually. Her attorney submitted the matter on the recommendation to continue mother's reunification without any argument that the services provided up to that point were not reasonable. Nor did mother or her attorney appeal from the juvenile court's reasonable services finding by arguing there was insufficient evidence to support it. Consequently, mother forfeited her right to now argue that the services provided by the department were not reasonable because the social worker did not maintain regular contact with her while she was incarcerated or arrange visitation while she was incarcerated, and delayed in providing her new referrals for services.

Further, even if mother had not forfeited the issue of reasonableness of services, we would conclude substantial evidence supported the juvenile court's finding. Mother had completed her services plan before she was taken into custody in December 2021. Had she not violated the law, the court may have returned the children to her custody at the six-month review hearing. Instead, she spent approximately two months in county jail where services were not available and then waited a month after she was released in February 2022 to contact the department. Meanwhile, Seguenza was attempting to contact her to complete referrals for her. Consequently, mother's failure to reunify had nothing to do with the turnover in social workers, as she claims, or any delay in providing her new referrals and everything to do with her conduct and choices. Further, mother would be hard pressed to argue services not reasonable when she completed them in two days.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).