[No. E049801. Fourth Dist., Div. Two. Aug. 31, 2010.]

In re T.G. et al., Persons Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
G.G., Defendant and Appellant.

COUNSEL

Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—G.G. (Father) appeals from the juvenile court's finding at the six-month review hearing that reasonable reunification services were provided to him as to his daughter, T.G., and his son, J.G. Father contends he was not provided with reasonable services between the disposition and six-month review hearings. If Father cannot obtain review of his contention on appeal, he requests discretionary writ relief.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2008, the Riverside County Department of Public Social Services (DPSS) filed a dependency petition pursuant to Welfare and Institutions Code[1] section 300, subdivision (b), as to T.G., J.G., and an older half brother, G.A.[2] An amended petition was filed on February 10, 2009. Both petitions alleged the mother (Mother) was unable to care for the children because of drug abuse, and Father, who did not live with Mother, failed to provide adequate support and protection of the children. It was further alleged Father had a criminal history related to drug abuse and domestic violence. Father tested positive for marijuana use on December 9, 2008, and admitted a long history of drug abuse and drug-related criminal offenses. In addition, Father told the social worker he had been incarcerated from July 31, 2007, until September 29, 2008, because of a domestic violence incident with Mother. The children were placed with maternal relatives.

On December 11, 2008, the court detained the children and ordered frequent and liberal visitation for both parents. Shortly after detention, the social worker reported weekly supervised visitation by both parents with the children. The record indicates Father's last visit with the children occurred in March or April 2009 due to Father's incarceration for a parole violation in April 2009.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother and G.A. are not involved in the current appeal, so factual information on them has not been included unless relevant to Father's appeal.

At the jurisdiction/disposition hearing on March 18, 2009, the juvenile court found the allegations in the petition to be true, concluded the children fell within section 300, ordered the children removed from the parents' custody, approved the case plan, directed the social worker to provide reunification services to the parents, and ordered the parents to participate in the services. Under the case plan, Father was required to adhere to a visitation schedule, participate in substance abuse treatment, an anger management program, individual counseling and random drug testing, and to comply with the conditions of his parole.

The six-month review hearing was originally scheduled for September 9, 2009, but was continued until October 14, 2009. At the six-month review hearing, Father's counsel asked the court to find Father was not provided with visitation while incarcerated since April 2009. He also wanted the court to find Father was not provided with reasonable services while in custody beginning April 2009. Based on the record before it, the court continued the children as dependents of the court, and made the following relevant findings and orders: (1) the care, custody, and control of the children should remain with DPSS; (2) Father's progress toward alleviating or mitigating the causes necessitating placement was inadequate; (3) the parents have failed to make substantive progress or complete the case plan; and (4) family reunification services should be continued. In addition, the court ordered DPSS to provide Father with correspondence classes while in prison and to insure telephonic visitation with the children.

## DISCUSSION

### Appealability

Citing *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147 [11 Cal.Rptr.3d 129] (*Melinda K.*), DPSS argues the juvenile court's reasonable services finding at the six-month review hearing is not appealable under section 395 because Father only challenges this finding in isolation and cannot show he was aggrieved by the juvenile court's six-month review order; the court did not take any adverse action against him based on the finding and continued his reunification services for another six months. In addition, DPSS urges us not to exercise our discretion to treat Father's appeal as a petition for writ of mandate.

Disagreeing with the holding in *Melinda K.*, Father contends the reasonable services finding contained within the order made at the six-month review hearing is appealable because orders subsequent to disposition are generally appealable and the reasonable services finding is adverse to his parental interests. According to Father, he is an aggrieved party under section 395

because the finding placed an obstacle in his path to reunifying with his children and complicated his ability to obtain appellate relief. He urges us to construe his appeal as not simply from an "isolated" reasonable services finding, but from an adverse finding that is part of an appealable order after judgment under section 395.

■ "Juvenile dependency law does not abide by the normal prohibition against interlocutory appeals . . . ." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 590 [50 Cal.Rptr.2d 745].) Under subdivision (a)(1) of section 395, "[a] judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." " 'In a section 300 proceeding, the order entered at the dispositional hearing is a final judgment . . . . [Citations.]' " (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1250 [98 Cal.Rptr.2d 844].) "[T]he court's dispositional and following orders are directly appealable, with the exception of an order scheduling a selection and implementation hearing under section 366.26. [Citations.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 259 [126 Cal.Rptr.2d 639].) "Generally . . . a parent may not attack the validity of a prior appealable order for which the statutory time for filing an appeal has passed. [Citation.]" (*Ibid.*)

■ "Generally, a parent who is aggrieved by an order after judgment in a juvenile dependency proceeding may take an appeal from that order. (§ 395.) 'To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement.' [Citation.]" (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1265 [92 Cal.Rptr.3d 80].) "For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship. [Citation.] 'The parent's primary interest in dependency is usually reunification. While the case is still in reunification, the parent's standing to assert errors affecting the rights of the other parent or the child . . . is fairly clear because there may be shared interests.' [Citations.]" (*In re Paul W.* (2007) 151 Cal.App.4th 37, 62 [60 Cal.Rptr.3d 329].)

As in this case, the court in *Melinda K., supra,* 116 Cal.App.4th at pages 1150 and 1152, continued reunification services at the six-month review hearing, and the mother's appeal only challenged the reasonable services finding made at this hearing. The appellate court concluded the reasonable services finding was not appealable under section 395, because "mother was not aggrieved by the finding . . . given that services were continued for at least another six months and no negative consequence flowed from the reasonable services finding." (*Melinda K.,* at p. 1153.) Overall, the order was favorable to the mother, because the court found her in compliance with the

case plan, complimented her progress, continued services, and found a substantial probability the child would be returned to her within six months. (*Id.* at p. 1156.) The appellate court did say its conclusion would be different if the mother was arguing "some adverse action against her" based on the reasonable services finding. (*Id.* at p. 1154.) For example, the court said its determination on the propriety of the mother's appeal would be different "[w]here the two findings of reasonable services and detriment are intertwined" and this "resulted in some negative consequence to the parent." (*Ibid.*)

On the other hand, the appellate court in *Melinda K.* exercised its discretion to treat the mother's appeal as a petition for writ of mandate and considered the merits of her claim, reasoning as follows: "Despite our conclusion that a reasonable services finding, by itself, is not appealable, we recognize that postdisposition orders in dependency proceedings are comprised of numerous findings and that many of those findings are premised on related findings which have been made during previous hearings. Generally, the findings made at each hearing—to the extent they are against a parent or legal guardian's interest in reunification—will form the basis of an adverse order which is immediately appealable. In certain circumstances though, as evidenced by the instant matter, it is possible that a finding which is not appealable now may later become part of the factual basis for a subsequent appealable order. But it is impermissible to challenge an earlier finding by way of an appeal from a subsequent order. . . . [¶] Thus, mother cannot appeal the reasonable services finding now, nor can she raise the issue by way of an appeal from any subsequent adverse order. But we decline to leave mother without any means by which to challenge the juvenile court's finding. We therefore hold that a petition for writ of mandate is the appropriate method by which to challenge a finding made by a juvenile court at a review hearing which does not result in an appealable order. In this way, a parent or legal guardian will be afforded meaningful appellate review of a finding which may ultimately have a significant effect on the dependency proceedings. Moreover, sequential appeals and their accompanying delays will be avoided. [Citation.]" (*Melinda K., supra*, 116 Cal.App.4th at pp. 1156–1157.)

The facts of this case are distinguishable from those at issue in *Melinda K.* because the court's order and findings at the six-month review hearing were not generally favorable to Father. Although the court continued services, it did not find Father in compliance with the case plan. Instead, the court concluded Father's progress toward mitigating or alleviating the causes necessitating placement was inadequate. Nor did the juvenile court in this case find a substantial probability of return. As acknowledged by the appellate court in *Melinda K., supra*, 116 Cal.App.4th at page 1157, all of these findings are interrelated. Because the court found Father's progress inadequate and concluded there was no substantial probability of return, we

cannot say that this case is analogous to *Melinda K.* Nor can we say for certain that no negative consequences flowed from the court's finding that reasonable services were provided up until the six-month review hearing.

We also question the holding in *Melinda K.* given our Supreme Court's recent decision in a case entitled *In re S.B.* (2009) 46 Cal.4th 529 [94 Cal.Rptr.3d 24] (*S.B.*). *S.B.* and *Melinda K.* are analogous in that they both concern the appealability of a single finding included within an appealable order. The juvenile court in *S.B.* held a permanency hearing pursuant to section 366.26. "At the section 366.26 hearing, the focus shifts away from family reunification and toward the selection and implementation of a permanent plan for the child. [Citation.] . . . If adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child." (*S.B.*, at p. 532.) As permitted by subdivisions (b)(3) and (c)(3) of section 366.26, the juvenile court found adoption of the children was probable, but difficult, and ordered a search for an appropriate adoptive family. (*S.B.*, at pp. 533–534.) The mother appealed from the " 'order that efforts be made to locate an appropriate adoptive family.' (§ 366.26(c)(3).)" (*Id.* at p. 534.)

■ The mother's appeal in *S.B.* was dismissed because the Court of Appeal was not persuaded by her reliance on the general rule of appealability provided in section 395, reasoning that she was challenging only the *finding* that her "children were probably adoptable." (*S.B., supra*, 46 Cal.4th at p. 534.) In addition, the Court of Appeal viewed orders under section 366.26, subdivision (c)(3), as "mere continuances of section 366.26 hearings, which did not aggrieve the parents in any way." (*S.B.*, at p. 534.) Our Supreme Court concluded this was error, reasoning as follows: "It is true that 'one does not appeal from a finding; one appeals from a judgment or from an order that the Legislature has designated as appealable.' [Citation.] However, review of findings is normally obtained by appeal from the ensuing judgment or order. [Citations.] That is what occurred here. Mother appealed from the 'order that efforts be made to locate an appropriate adoptive family.' " (*Id.* at p. 534.) " '[W]e have repeatedly held that if the Legislature intends to abrogate the statutory right to appeal, that intent must be clearly stated. "The right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment . . . ." [Citations.]' [Citation.] The interests of parents and children are substantially affected by a section 366.26(c)(3) order. [Citations.]" (*Id.* at p. 537.)

As explained by the Supreme Court in *S.B.*, the interests of parents and children are substantially affected by an order under section 366.26, subdivision (c)(3), because long-term foster care is essentially eliminated as a

placement option if no adoptive family is found after the 180-day search. In other words, a parent or child can be aggrieved by an order under section 366.26, subdivision (c)(3), if the finding of adoptability is not based on substantial evidence, because this essentially places the parents and children at a procedural disadvantage. According to the Supreme Court, such an order should, therefore, be reviewable unless the Legislature clearly abrogates the right by statute. (*S.B., supra*, 46 Cal.4th at p. 537.)

██ Likewise, a parent or child can by aggrieved by a reasonable services finding at the time of the six-month review hearing if it is not supported by substantial evidence. Such a finding can put the interests of parents and children in reunification at a significant procedural disadvantage. First, reunification services are generally limited to 12 months for a child over the age of three years. (§ 361.5, subd. (a)(1).) At the time of the 12-month review hearing, the juvenile court can only return a child to parental custody if it finds that return would not create a substantial risk of detriment to the physical safety or emotional well-being of the child. (§ 366.21, subd. (f).)

Second, a heightened showing is required at the time of the 12-month review in order to continue services to the statutory maximum of 18 months. The court must find "that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian." (§ 361.5, subd. (a)(3); see also § 366.21, subd. (g).)

To conclude there is a "substantial probability" of return to the parents under section 366.21, subdivision (g), the court must find there was consistent and regular visitation by the parent and "significant progress in resolving problems that led to the child's removal." (§ 366.21, subd. (g)(1)(B).) In addition, the court must find the parent "has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(C).) Under these circumstances, it is obvious it would be significantly more difficult for a parent to either reunify with a child or to satisfy the heightened showing required for a continuation of reunification services if the parent was not provided with reasonable services during the first six months of the reunification period.

Third, as noted by the appellate court in *Melinda K., supra*, 116 Cal.App.4th at pages 1156–1157, a parent whose services are terminated at the 12-month review period based in part on an erroneous finding of reasonable services

during the first six months of reunification, would be unable to challenge that finding by way of an appeal from a subsequent adverse order at the time of the 12-month review hearing.

A parent also faces an additional procedural hurdle if the juvenile court terminates reunification services at the 12-month review hearing based, in part, on an erroneous reasonable services finding at the six-month review hearing, and at the same time sets a hearing pursuant to section 366.26 to consider the termination of parental rights. "All orders issued at a hearing in which a section 366.26 hearing is ordered are subject to section 366.26, subdivision (*l*) and must be reviewed by extraordinary writ. [Citation.]" (*In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817 [49 Cal.Rptr.3d 565].)

Based on the foregoing, we agree with Father's contention that the reasonable services finding contained within the order made at the six-month review hearing is adverse to his parental interest in reunification. The finding and order made at the six-month review hearing is therefore appealable under section 395. As a result, we can consider the merits of the juvenile court's reasonable services finding without the need to treat Father's appeal as a petition for discretionary writ relief.

### *Reasonableness of Reunification Services*

Father believes the social worker's case plan was inadequate because it did not list any service objectives or referrals for him and did not delineate his needs. He also complains he did not receive adequate assistance from the social worker while he was in prison. At that time, Father contends the social worker did not investigate services available to him at the prison and did not offer any information as to whether they satisfied any case plan goals. In addition, Father argues the social worker should have arranged for visitation or communication with the children while he was in prison.

■ "The paramount goal in the initial phase of dependency proceedings is family reunification. [Citation.]" (*In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1113 [70 Cal.Rptr.3d 583] (dis. opn. of Rothschild, J.).) "At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 454 [90 Cal.Rptr.3d 44].) Reunification services must be "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (c).) Accordingly, a reunification plan must be appropriately based on the particular family's "unique facts." (*In re Alexis E.*, at p. 454.) "Absent a finding of detriment, even incarcerated parents are entitled to reasonable reunification services, whatever the likelihood of success. [Citations.] Visitation is a critical component, probably the

most critical component, of a reunification plan. [Citations.]" (*In re Lauren Z.*, at pp. 1113–1114 (dis. opn. of Rothschild, J.).)

■ DPSS "must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 [83 Cal.Rptr.3d 229].) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547 [3 Cal.Rptr.2d 217].) "The applicable standard of review is sufficiency of the evidence. [Citation.]" (*Amanda H.*, at p. 1346.)

Preliminarily, we must reject Father's contention the social worker did not prepare an adequate case plan. In support of this argument, Father only cites the case plan signed by the social worker on August 27, 2009, which was prepared in anticipation of the six-month review hearing originally scheduled for September 9, 2009, but continued until October 14, 2009.

Prior to the case plan signed on August 27, 2009, in anticipation of the six-month review hearing, the record indicates the social worker did prepare an appropriate case plan for Father based on his circumstances. This original case plan was prepared in anticipation of the jurisdiction/disposition hearing originally scheduled for January 8, 2009, but delayed until March 18, 2009. As demonstrated by the record, the original case plan did set forth a list of service objectives, as well as program referrals to be made available to Father by the social worker, all of which were specifically designed to address the problems which led to the dependency. Under the case plan, Father was required to adhere to a visitation schedule, participate in substance abuse treatment, an anger management program, individual counseling, and random drug testing. The case plan also said Father "[w]ill notify the Social Worker of any changes in where you live . . . within 72 hours of the change."

On December 29, 2008, the record shows the social worker had a discussion with Father about his case plan and services. On December 30, 2008, he was referred by the social worker to parenting education, counseling services, and anger management classes. The court approved the case plan at the jurisdiction/disposition hearing on March 18, 2009. In keeping with the court's order, the social worker sent written notice to the parents of their respective referrals to services on April 24, 2009. However, during this initial

time period, Father demonstrated no interest in completing the case plan or in taking advantage of the services offered to him. As of February 4, 2009, the social worker reported Father had not yet enrolled in a substance abuse treatment program and had not made adequate progress in addressing the issues that led to the detention of the children. He failed to report for drug testing, stopped visiting the children, and was returned to prison in April 2009 for violating his parole. It appears Father's last contact with the social worker about weekly visitation with the children was on March 17, 2009, the day before the disposition hearing.

More importantly for our analysis, it appears Father did not keep the social worker advised of his whereabouts. While it is true the social worker is charged with maintaining reasonable contact with the parents during the course of the reunification plan, he or she cannot do so without some degree of cooperation from the parent. The record shows Father did provide the court and DPSS with a mailing address and cell phone number at the time of the detention hearing in December 2008. However, Father did not cite, and we were unable to locate, anything indicating he told the social worker he was incarcerated in April 2009 for a parole violation and was no longer living at the address he previously provided to the social worker and the court. In June 2009, the social worker sent a letter to Father's former residence, suggesting she was not yet aware he was no longer living there. The record indicates the social worker was not aware of Father's incarceration until July 31, 2009, when the children's relative caretaker gave the social worker Father's address in prison. She then sent Father a letter in July 2009. On August 25, 2009, the social worker conducted a search of court records and learned Father had been incarcerated since April 2009 for violating his parole. On August 26, 2009, the social worker left a message at the prison with Father's counselor.

Based on our review of the record, it is apparent that when the new case plan was prepared and signed on August 27, 2009, in anticipation of the six-month review hearing originally scheduled for September 9, 2009, the social worker had only recently learned of Father's incarceration and had been attempting to contact him by telephone and correspondence. Our review of the record indicates the social worker would not have had enough time or the necessary information to develop and prepare a new list of goals, service objectives, and referrals based on Father's changed circumstances to be included in the new case plan signed on August 27, 2009.

Father finally did write a letter to the social worker on or about August 25, 2009, and DPSS received the letter on September 1, 2009. In his letter of August 25, 2009, Father told the social worker he had enrolled in anger management, parent, substance abuse, and victim awareness classes at the

prison. He later sent the social worker a copy of a completion certificate for a parenting class he completed on September 8, 2009. However, it was simply too late by the time Father wrote the letter on August 25, 2009. The first six months of the 12-month reunification period were about to expire, as the six-month review hearing was originally scheduled for September 9, 2009, but was then continued until October 14, 2009.

In an addendum report signed on October 6, 2009, the social worker advised the court she was able to have a telephone conversation with Father about his case plan after she received his letter dated August 25, 2009. Because Father had enrolled in classes and appeared motivated to complete his case plan objectives while incarcerated, the social worker recommended continuing reunification services. The court followed the social worker's recommendation and ordered visitation and additional services for Father.

■ Based on the foregoing, we strongly disagree with Father's contention that DPSS "completely failed in its duties with respect to the father and his children." In our view, the record includes sufficient evidence showing the social worker did all that was required under the circumstances. We therefore agree with the juvenile court's conclusion Father was provided with reasonable reunification services prior to the six-month review hearing.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Miller, J., concurred.