Filed 4/14/15  R.S. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| R.S., | |
| Petitioner, | E062768 |
| v. | (Super.Ct.No. SWJ1400337) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Timothy F. Freer, Judge.  Petition denied.

Charles A. Casey, for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

1

The juvenile court declared the child, M.M., a dependent of the court, removed him from the custody of petitioner R.S. (mother), and granted mother six months of reunification services. At the six-month review hearing, the court terminated mother's reunification services and set the Welfare and Institutions Code section 366.26 hearing.[1] Mother filed a petition for extraordinary writ contending real party in interest Riverside County Department of Public Social Services (DPSS) failed to provide her reasonable services. The petition is denied.

FACTUAL AND PROCEDURAL HISTORY

In April 2014 a social worker with DPSS received a referral for general neglect regarding the child. Mother had just given birth to the child and both had tested positive for amphetamines and opiates while in the hospital. The child was transferred to the NICU because he showed signs of withdrawal for which he was given methadone and opium.

Mother reported using drugs since the age of 18. She admitted using heroin during her pregnancy. Mother reported entering an inpatient drug program, but failed to complete it. For two months during her pregnancy, mother was incarcerated; she used methadone during her incarceration. Mother was initially sentenced to drug court, but failed to comply with its conditions so she opted to serve her time in jail. Upon release from jail, mother began injecting heroin again, three times daily.

---

[1] All further statutory references are to the Welfare and Institutions Code.

Mother admitted to police that after her water broke, she delayed going to the hospital in order to use heroin.  Mother was receiving methadone while hospitalized after the birth of the child.  Mother had an extensive criminal history including arrests and convictions for drug related offenses.  Mother had two an active warrants for her arrest issued on February 24, and March 24, 2014.  Police subsequently arrested father when he left the hospital.[2]  A search of parents' car incident to the arrest resulted in the seizure of three needles, a methamphetamine pipe, and heroin.  The police reported mother would also be arrested once she was released from the hospital.

The juvenile court detained the child on April 23, 2014.  In the May 9, 2014, jurisdiction and disposition report, the social worker reported that parents had informed her they wanted to enroll in an inpatient substance abuse program prior to the child's birth, but purposefully waited knowing DPSS would take the child away after his birth and provide them services.  Between the time mother was released from the hospital and the preparation of the report, mother made no effort to visit the child.  On May 6, 2014, mother reported she was entering a 45-day inpatient drug program followed by aftercare services.  Mother indicated she would call the social worker to inform her of the address of the program, but had yet to do so.  The child suffered from "extensive medical health problems" due to mother's use of heroin during her pregnancy.

In an addendum report filed June 4, 2014, the social worker noted mother had been visiting the child lately.  The visitor log reflected mother had visited the child at the

---

[2]  Father is not a party to the petition.

3

hospital 13 times between May 12 and 23, 2014. Mother had disclosed to the NICU social worker that mother was no longer in drug treatment and had been using heroin again. The social worker checked with the inpatient drug program and was informed mother had checked in on May 7, 2014, and checked out on May 8, 2014.

On May 29, 2014, the social worker attempted to reach mother, first by telephone and then by making an unannounced visit at mother's residence. The telephone call went directly to voicemail and the social worker left a message. The social worker did not see mother at her residence as no one appeared to be home. On June 2, 2014, the social worker received a largely unintelligible call from mother apparently regarding the child's release from the hospital. The child had been released that day.

At the jurisdiction and disposition hearing on June 11, 2014, the court found the allegations in the petition true, adjudged the child a dependent of the court, removed the child from mother's custody, and granted mother six months of reunification services. In the six-month status review report filed November 26, 2014, the social worker recommended mother's reunification services be terminated. Mother had been convicted on June 24, 2014, of two felony offenses, including child endangerment, and expected to be in jail until January 2015. The social worker communicated with mother in jail by phone and mail. The social worker met mother in jail once in November 2014. In an addendum report filed on January 14, 2015, the social worker noted mother was still in custody, but had been transferred to Indio Jail.[3]

---

[3] There is no indication in the record where mother was initially incarcerated.

At the six-month review hearing on January 22, 2015, it was noted mother was still in custody. Counsel stipulated mother would testify, "She has been participating in a parent program at the jail. It's a three-book program. She's on the second book right now. However, that was interrupted by the fact she was moved to Indio. So she couldn't continue with the program. She was also participating in the GOALS program which is a drug program of approximately three months duration. She was two months into the program and, again, she could not continue participating because she was transferred to Indio." Mother's counsel argued DPSS had failed to provide reasonable services.

The juvenile court found DPSS had provided reasonable services: "I find that the Department has complied with the case plan. The extent of the progress made by the mother towards alleviating or mitigating the causes has been unsatisfactory at this time." The court denied mother reunification services and set the section 366.26 hearing.

DISCUSSION

Mother contends DPSS failed to offer mother reasonable services. We disagree.

"'The paramount goal in the initial phase of dependency proceedings is family reunification. [Citation.]' [Citation.] 'At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child.' [Citation.] Reunification services must be 'designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' [Citation.] Accordingly, a reunification plan must be appropriately based on the particular family's 'unique facts.' [Citation.] 'Absent a finding of detriment, even incarcerated parents are

5

entitled to reasonable reunification services, whatever the likelihood of success. [Citations.]'" (*In re T.G.* (2010) 188 Cal.App.4th 687, 696-697.)

DPSS "'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult. . . .' [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] 'The applicable standard of review is sufficiency of the evidence. [Citation.]' [Citation.]" (*In re T.G.*, *supra*, 188 Cal.App.4th at p. 697)

Mother's abuse of controlled substances, particularly while pregnant with the child, was the condition that led to the dependency of the child. On April 18, 2014, the social worker provided mother with referrals to resources for substance abuse treatment, counseling, parenting, and other services. Mother enrolled in an inpatient drug program on May 7, 2014, but checked out the next day. Mother reported using heroin again. On May 29, 2014, the social worker attempted to contact mother, to no avail, both by telephone and by an unannounced visit to mother's residence. The social worker received a return call on June 2, 2014, from mother, but was unable to effectively communicate with her.

Mother was apparently arrested sometime on or before June 24, 2014, when she was convicted of two felony offenses and sentenced to jail. In the interim prior to being arrested, mother had apparently failed to enroll in, participate in, or complete any of the services for which she had been provided referrals.

After mother's incarceration, the social worker communicated with mother by phone and mail and made one visit to mother in jail. The social worker noted on November 25, 2014, "The mother's service objectives were to obtain resources to meet the needs of her child and to provide a safe home, stay free from illegal drugs and show her ability to live free from drug dependency, to not break the law and avoid arrests and convictions, and to follow all conditions of probation. The mother's responsibilities were to participate in general counseling, participate in and complete a parenting education program, and to engage in substance abuse services including an inpatient program." Mother's conviction on a felony offense unrelated to the instant case reflected her failure to abide by one of the major objectives of her case plan. As the social worker indicated, mother had "not provided any documentation of completion of any service or objective in the case plan."

The social worker further reported that "mother stated she has participated in the GOALS program while incarcerated. Per the mother, this program offers substance abuse services, education counseling, and transitional planning. The mother reported to me that the service provider would not sign a release of information so that I could obtain copies of the materials used. The mother also asserted that the program does not provide participants with certificates of completion."

At the six month hearing on January 22, 2014, it was stipulated that mother was "participating in the GOALS program which is a drug program of approximately three months duration. She was two months into the program and, again, she could not continue participating because she was transferred to Indio." However, mother still failed to provide substantive information as to whether the program met the criteria of her service plan and whether mother satisfactorily completed any portion of that program and, hence, any of her service goals. Substantial evidence supported the juvenile court's determination that DPSS provided reasonable services to mother. Mother simply failed to avail herself of those services or prove that any alternate services in which she engaged met the criteria of her service plan.

## DISPOSITION

Mother's petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

8