Filed 10/17/24  In re Ari. R. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re Ari. R., a Person Coming Under the Juvenile Court Law. | B334350<br><br>(Los Angeles County Super. Ct. No. 22CCJP04492B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>O.O.,<br><br>Defendant and Appellant. |  |

APPEALS from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

O.O., the father of minor Ari. R., appeals from the juvenile court's orders at the six- and 12-month review hearings.  O.O. challenges the juvenile court's findings that the Los Angeles County Department of Children and Family Services (Department) provided him with reasonable reunification services.  The Department has moved to dismiss the appeal on the grounds that O.O. lacks standing and the appeal is moot.  In support of the motion, the Department asserts O.O. is not aggrieved by the juvenile court's findings because he does not seek reversal of the juvenile court's orders denying him custody of Ari. R. and, at each review hearing, the juvenile court ordered continued reunification services.  The Department further contends the appeal is moot because the juvenile court returned Ari. R. to her mother's custody while this appeal was pending.

We conclude O.O. has standing to appeal and that the appeal is not moot.  The juvenile court has not terminated dependency jurisdiction over Ari. R.  An erroneous reasonableness finding could impair O.O.'s ability to seek additional reunification services if Ari. R. is again removed from mother's custody.  We further conclude substantial evidence does not support the juvenile court's finding that the Department provided reasonable services to O.O. prior to the six-month review hearing.  However, substantial evidence supports the reasonable services finding at the 12-month review hearing.  We reverse the juvenile court's six-month reasonable services finding as to O.O.  In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2022, Ari. R. (born September 2018) and her two maternal half siblings lived with mother. In October 2022, the Department received a report that mother and D.T., the father of Ari. R.'s older half sibling, were involved in a domestic violence dispute in front of Ari. R.'s younger half sibling. Ari. R. was not present during the altercation. Mother admitted she had a history of methamphetamine use but denied current use. She also reported suffering from depression and anxiety. The Department detained the children.

In November 2022, the Department filed a petition under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j),[1] alleging, among other things, that mother and D.T. had a history of engaging in violent altercations in the presence of the children and were current abusers of methamphetamine and marijuana. The petition identified O.O. as the alleged father of Ari. R. At the detention hearing, the juvenile court deferred a finding on paternity with respect to Ari. R. Ari. R. was detained from mother and placed with the maternal grandmother.

In an interview for the jurisdiction/disposition report, mother told the Department that O.O. only married her to get a Green Card. When she became pregnant with Ari. R., O.O. did not want anything to do with the baby and mother never saw him again.

In February 2023, the juvenile court again found O.O. to be Ari. R.'s alleged father. The Department reported that it had contacted O.O., who asked to keep his addresses confidential "because he fears maternal family due to past threats towards

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

3

him." O.O. indicated he had been married to mother for one month and ended the marriage due to infidelity. Mother never told him he had a child, and he did not believe Ari. R. was his child. If Ari. R. was his child, O.O. wanted to take her from the maternal family because they were "dangerous people and drug users." However, he also did not want anything to do with the case. The court appointed counsel for O.O. and ordered genetic testing.

At the April 2023 adjudication hearing, the juvenile court sustained the petition as amended by interlineation. O.O. was not named in the petition.

In a last minute information filed in May 2023, the Department reported that DNA testing indicated a 99.9 percent probability that O.O. was Ari. R.'s biological father. O.O. subsequently filed a statement regarding parentage in which he reported that he "told friends and family that [Ari. R.] is my child" and that he was "more than willing to accept the child into my home." The juvenile court found O.O. to be Ari. R.'s presumed father.

Before the disposition hearing, the Department reported that O.O. did not wish to have his home assessed and did not want custody of Ari. R. at that time. O.O. "stated his thought was to get full custody at a later time and take the child to live in Nigeria with his other older children." The social worker indicated that plan might not be ideal since mother intended to reunify with Ari. R., but O.O. responded that mother had too many children and he would be doing her a favor by taking one away. If his plan was not possible, O.O. was willing to pay child support and "continue to have visits when time permits." The Department scheduled a visit between O.O. and Ari. R., which

4

O.O. canceled.  He told the social worker "he would rather wait until the next Court hearing to discuss visits."  The Department recommended O.O. receive family reunification services and monitored visits with discretion to liberalize.

At the June 2023 disposition hearing, counsel for O.O. stated O.O. was willing to have his home assessed and he was seeking custody.  She denied that O.O. wanted to take Ari. R. to Nigeria permanently and requested an order releasing Ari. R. to O.O. after his home was assessed.  Ari. R.'s attorney opposed the request on the grounds that the minor had no relationship with O.O. and O.O. had declined the opportunity to visit her and refused to have his home assessed.  She also expressed concerns about O.O.'s stated desire to separate Ari. R. from her siblings, with whom she was bonded.  The Department joined these arguments.

The juvenile court found by clear and convincing evidence that releasing Ari. R. to O.O. would pose a detriment to the minor because she had no relationship with O.O., the placement would remove her from a caregiver and siblings with whom she was bonded, and O.O.'s wishes regarding placement had been inconsistent.  It ordered family reunification services for the parents.  O.O.'s case plan consisted only of monitored visitation with Ari. R. three times a week.  The court gave the Department discretion to liberalize the visits.

In November 2023, the Department filed a status report addressing mother's progress.  The report did not mention O.O. However, in a last minute information filed less than a week before the six-month review hearing, the Department reported that O.O. had only had one visit with Ari. R., which took place in July and went well.  However, the Department had "encountered

5

great difficulty in arranging further visits . . . due to minor's school schedule. Minor gets out of school from the after school program at 6:00pm. This timeframe is after the office closes, and therefore, creates conflict in arranging for a monitor to be available."[2] O.O. had indicated that he was only comfortable with a monitor from the Department. The Department reported that the social worker and caregiver were planning to arrange one or more visits during Ari. R.'s upcoming holiday break.

At the six-month review hearing held on December 6, 2023, O.O.'s attorney asked that the court make a no reasonable services finding. She argued that O.O. "does not have people to monitor his visits" and she did not believe the Department was working towards providing O.O. with visitation since it failed to provide any information about its efforts to arrange or facilitate visits. She requested unmonitored visitation. In the alternative, O.O.'s attorney asked for the appointment of a Department aide and that the court order the Department to work with Ari. R.'s school and caregiver to arrange visits during the week. Counsel for the Department asked that O.O.'s visits remain monitored and submitted that it had provided reasonable services considering the children's "fairly strict schedules." The Department's counsel reiterated that O.O. had been unwilling to have anyone but the Department monitor visits, even though maternal family and a non-related extended family member were available to monitor his visits, and this had been a barrier for the Department. She represented that the Department would assess obtaining an aide to serve as a monitor.

---

[2] The previously filed status report indicated then five-year-old Ari. R. was attending a full-day transitional kindergarten program at a preschool.

6

The juvenile court concluded continued dependency jurisdiction and removal was necessary but both parents had made substantial progress. It further stated: "There appears to be a bit of a factual dispute as to why [O.O.] has not had visits, and on that basis I am not finding no reasonable services." It declined to liberalize O.O.'s visitation based on a single visit. The court instructed the Department to continue providing family reunification services, assist in finding monitors for O.O., and evaluate weekday visits for O.O. It also advised that O.O. should provide the Department a list of names for assessment as monitors, as that would maximize his opportunities for monitored visitation.

In a status review report filed December 29, 2023, the Department reported continued challenges arranging visits between O.O. and Ari. R. because Ari. R. got out of school shortly before the Department office closed. The Department was exploring the possibility of having a case aide assigned to monitor visits over the weekends at a neutral location.

Prior to the 12-month review hearing, O.O. sought admission of three exhibits concerning his efforts to arrange for visitation. Two were admitted. The first exhibit was a text message exchange between O.O. and a social worker reflecting attempts to arrange visitation between November 2023 and January 2024. Although O.O. and the social worker arranged a visit for December 20, the social worker reported on that day that "[t]he caregiver said some of the girls are under the weather" and was unable to bring Ari. R. for a visit. The following day, December 21, the social worker asked whether O.O. would be able to accommodate a weekly visit at the Department office if she was able to locate a monitor, to which O.O. agreed. When the

social worker informed O.O. she would not be available to supervise a visit the following week, he expressed frustration that he had not seen Ari. R. on her birthday and would not see her for Christmas or New Year either. The social worker stated that she was submitting the referral for a monitor that day. Although she was going to be on vacation the next week, she indicated she would be conferring with her supervisor to attempt to arrange a visit for O.O. that week. However, she cautioned that the Department would likely be short of workers given the holidays. O.O. and the social worker subsequently arranged and confirmed a visit for January 8. The other exhibit reflected the school hours for Ari. R.'s preschool.

In a last minute information filed January 17, 2024, the Department reported that there had been no further visitation between O.O. and Ari. R. O.O. had canceled the visit scheduled for January 8 and O.O. and Ari. R. remained on waiting lists for Department monitors. The social worker was monitoring the lists. The Department informed the court that the social worker would attempt to arrange and monitor visits as much as the worker's schedule permitted.

On January 18, 2024, the juvenile court held the 12-month review hearing. O.O.'s counsel again asked the court to make a no reasonable services finding. She acknowledged the shortage of Department monitors but argued that it was unreasonable to require monitored visitation when the Department was unable to provide a monitor. Counsel argued: "I do not believe that the fact that father either said that he only wants [Department] monitors or that he, himself, does not have people to provide, should be held against him when it's, again, the responsibility of the Department." In the alternative, she asked the court to order the

8

Department to provide updates regarding other alternatives for visitation and for unmonitored visitation. Counsel for the Department argued that the Department had made reasonable efforts with respect to O.O. given the "clear limitations as to monitors."

The juvenile court admitted the exhibit reflecting O.O.'s text messages with the social worker but stated that it was "not persuaded [that] these captured a whole of any efforts the Department was making, in terms of there is no one to verify on the receiving end" and would give the exhibit "appropriate weight." The court noted "a threshold matter, dad has a monitor he does not want, that would be, grandma. [¶] . . . dad's own personal issue with the monitor is not a reason that he can't have visits. [¶] He can have visits, if he would use the monitor that the Department has assessed is appropriate. [¶] He could have been visiting his child this entire time, but the threshold issue for dad is he has no other monitors to offer. [¶] He does not like the one that was selected." This was a "major issue that [O.O.] has a role in."

The court ordered the Department to follow up on possible monitors but stated it was "not conceding that [O.O.'s] issue with the available monitor is an appropriate one." The court found the Department had offered reasonable services and ordered that the Department facilitate O.O.'s visits with the existing monitor (maternal grandmother) while an alternative monitor was located, explain in detail its efforts to find other monitors, and assess the use of a private monitor for O.O.'s visits.

O.O. timely appealed from the December 6 and January 18 orders.

On March 13, 2024, the juvenile court ordered Ari. R. returned to mother's custody under the supervision of the Department. The court ordered family maintenance services for the parents, instructed the Department to assess unmonitored visits for O.O., and ordered the Department to provide O.O. and his counsel additional information concerning Ari. R.'s school program.[3]

## DISCUSSION

O.O. contends there was not clear and convincing evidence of reasonable services at the six-month review hearing where the juvenile court failed to reconcile the factual dispute as to why O.O. had not received more visits. He also argues that the Department failed to make a reasonable plan for visitation at both the six-month and 12-month review hearings. The Department asserts the appeal should be dismissed for lack of standing and mootness. Alternatively, it argues that substantial evidence supports the juvenile court's reasonableness findings.

---

[3] We grant the Department's request for judicial notice of the juvenile court's March 13, 2024 findings and orders. The Supreme Court recently observed that courts can " ' " 'take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments.' " ' [Citation.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106.) The court also confirmed that the application of Code of Civil Procedure section 909, which allows a reviewing court to make factual findings in addition to those made by the trial court, was "warranted" where "dependency jurisdiction was mooted by that court's later termination of jurisdiction while the appeal was pending" and the additional evidence "pertained not to the underlying merits of the issue on appeal . . . but to the collateral issue of whether the Court of Appeal should exercise its discretion in deciding a technically moot case." (*Id.* at p. 1105.)

10

## I. Applicable Legal Standards

"Dependency proceedings span up to four stages: jurisdiction, disposition, reunification, and permanency." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 (*Michael G.*).) "This case concerns the reunification stage. When a child has been removed from a parent's custody, the court ordinarily must order child welfare services designed to facilitate the reunification of the family." (*Ibid.*, citing §§ 361.5, subd. (a), 362, subds. (c), (d).) "Visitation is an essential component of any reunification plan. [Citation.] To promote reunification, visitation must be as frequent as possible." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 (*Alvin R.*).)

"Parents of children three or older are presumptively eligible for at least 12 months of [reunification] services." (*Michael G.*, *supra*, 14 Cal.5th at p. 625, citing § 361.5, subd. (a)(1)(A).) "During the reunification stage, the juvenile court must hold periodic review hearings to evaluate the status of reunification efforts and appropriate next steps. [Citation.] These review hearings ordinarily take place at six-month intervals. At each review hearing, a court evaluates, among other things, the adequacy of the reunification services offered or provided and the extent of the parent's progress. . . . [A]t the six- and 12-month status hearings, the court must find that the parent has been provided or offered reasonable reunification services before the court can proceed to set a hearing to decide whether to terminate parental rights and select a permanent plan for the child." (*Michael G.*, at p. 625.) At both hearings, if the child is not returned to the parent, the juvenile court is required to determine by clear and convincing evidence whether the social services agency provided or offered reasonable services

that were designed to aid the parent in overcoming the problems that led to the initial removal and continued custody of the child. (§ 366.21, subds. (e)(8), (f)(1)(A).)

The Department "must make a ' " 'good faith effort' " ' . . . to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success." (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) "Although the statute does not define 'reasonable services,' the Courts of Appeal have generally held that, to support a finding that services were reasonable, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*Michael G.*, *supra*, 14 Cal.5th at p. 625, fn. 6.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence. [Citations.] ' " 'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact.' " ' [Citations.] Even if there is no substantial conflict in the evidence, we must nevertheless draw all legitimate inferences in support of the findings of the juvenile court." (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1158.) However,

12

when the burden of proof at the trial court level is clear and convincing, the substantial evidence standard of review should account for the higher level of certainty demanded by that burden of proof, as compared to facts proven by preponderance of the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998–1006; see also *Alvin R.*, *supra*, 108 Cal.App.4th at p. 971 [when applying substantial evidence standard with respect to reasonable services finding, "we bear in mind the heightened burden of proof"].)

## II.    Appealability

The Department has moved to dismiss this appeal on two grounds related to appealability. First, the Department contends O.O. lacks standing because he was not aggrieved by any of the juvenile court's orders. (*In re K.C.* (2011) 52 Cal.4th 231, 236 [for purposes of appellate standing in a dependency case, "[a]n aggrieved person . . . is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision"].) The Department points out that O.O. does not challenge any juvenile court order, including the finding that it would be detrimental to place Ari. R. in his custody, and he does not contend that any order of the court should be reversed. The Department further argues that this court can provide father no effective remedy because he has already obtained the relief to which he would have been entitled had the juvenile court made a no reasonable services finding: an additional period of reunification services. (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 678 (*Serena M.*).)

We agree with the court in *In re T.G.* (2010) 188 Cal.App.4th 687 (*T.G.*), which rejected similar arguments. In

*T.G.*, as in this case, the father purported to appeal from the juvenile court's finding at the six-month review hearing that reasonable reunification services were provided to him. The social services agency argued the finding was not appealable under section 395 because the father challenged it in isolation and could not show he was aggrieved since the court took no adverse action against him and continued his services.[4] (*T.G.*, at pp. 690, 691.)

The appellate court concluded that although the father did not challenge the juvenile court's order continuing the children's removal from his custody, the reasonable services finding was itself appealable. The court reasoned that "a parent . . . can [be] aggrieved by a reasonable services finding at the time of the six-month review hearing if it is not supported by substantial evidence. Such a finding can put the interests of parents and children in reunification at a significant procedural disadvantage." (*T.G.*, *supra*, 188 Cal.App.4th at p. 695.)

The court explained that reunification services are generally limited to 12 months for a child over the age of three, and a heightened showing is required at the 12-month review hearing to continue reunification services to the statutory

---

[4]  " 'Generally, a parent who is aggrieved by an order after judgment in a juvenile dependency proceeding may take an appeal from that order. (§ 395.) "To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement." [Citation.]' [Citation.] 'For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship. [Citation.]' " (*T.G.*, *supra*, 188 Cal.App.4th at p. 692.)

14

maximum of 18 months.  The court must find there was consistent and regular visitation by the parent, the parent made significant progress in resolving problems that led to the child's removal, and the parent must have demonstrated the capacity and ability to complete the objectives of the parent's treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.  (*T.G.*, *supra*, 188 Cal.App.4th at p. 695; § 366.21, subd. (g).)  "Under these circumstances, it is obvious it would be significantly more difficult for a parent to either reunify with a child or to satisfy the heightened showing required for a continuation of reunification services if the parent was not provided with reasonable services during the first six months of the reunification period."  (*T.G.*, at p. 695.)

The *T.G.* court further reasoned that "a parent whose services are terminated at the 12-month review period based in part on an erroneous finding of reasonable services during the first six months of reunification, would be unable to challenge that finding by way of an appeal from a subsequent adverse order at the time of the 12-month review hearing."  (*T.G.*, *supra*, 188 Cal.App.4th at pp. 695–696.)  This fact also demonstrated the father was aggrieved by the reasonable services finding at the six-month hearing.

Here, O.O. challenged the reasonable services findings at both the six and 12-month review hearings, but the *T.G.* court's reasoning remains applicable.  The reasonable services findings at both hearings are adverse to O.O.'s parental interest in gaining custody of Ari. R.  (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 974 [unless erroneous six-month reasonable services finding reversed "the prejudice to father from the ruling will come later,

15

at each successive phase of the proceedings"; "without visitation, father may face termination of reunification efforts"].)  O.O. has sufficiently demonstrated he is aggrieved by the juvenile court's findings to establish his standing to maintain the appeal.

Second, the Department asserts O.O.'s appeal is moot because Ari. R. has been returned to mother's custody.  The case is no longer in a reunification phase, and O.O. is not entitled to reunification services so long as Ari. R. is in the custody of at least one parent.  Any order of services intended to enhance O.O.'s relationship with Ari. R. is subject to the juvenile court's discretion.  (*In re C.S.* (2022) 80 Cal.App.5th 631, 636–637; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212–213.)

"A case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  Speculative future harm is insufficient to avoid mootness.  (*Id.* at pp. 278, 280.)  When a parent has failed to demonstrate a specific legal or practical consequence that will be averted upon reversal, "the case is moot, but the court has discretion to decide the merits nevertheless." (*Id.* at p. 283.)

While reversing the juvenile court's reasonable services findings from the six- or 12-month hearings would have no immediate effect on the proceedings, we conclude O.O.'s appeal is not moot.  The March 13, 2024 order states that the juvenile court retained jurisdiction and Ari. R. was returned to mother "contingent upon mother continuing to test negative and continue

16

participating in Court ordered programs." It is possible that the juvenile court could remove Ari. R. from mother's custody under section 387 if mother fails in either of these respects. Should that occur, the juvenile court may be in the position of determining whether any further reunification services should be provided to O.O.

Although more than 18 months have passed since Ari. R. was removed,[5] a previous finding that the Department failed to provide adequate reunification services could permit O.O. to argue for additional services. In *Michael G.*, the Supreme Court concluded that a juvenile court has discretion under section 352 to continue a permanency planning hearing and order additional reunification services where good cause exists. (*Michael G.*, *supra*, 14 Cal.5th at p. 632, citing § 352, subd. (a)(1)–(2); see also *Michael G.*, at p. 633 [power to continue a permanency hearing plan implied a power to continue reunification efforts].) The Supreme Court observed that, "[w]here . . . deprivation of

---

[5]     Eighteen months from the time a child is initially removed is " 'generally considered the outer statutory time limit for reunification services.' " (*In re Damian L.* (2023) 90 Cal.App.5th 357, 371; see also § 361.5, subd. (a)(3)(A).) "Once a child is initially removed from their parent's custody, a deadline is set, and it is not reset if the parent regains custody at some point during the time period. To construe section 361.5's language as requiring the court to reset the 18-month deadline simply because a parent succeeded in temporarily regaining physical custody ' " 'would scuttle the purpose of the statute merely to preserve its form.' " ' [Citations.]" (*Damian L.*, at p. 376; accord, *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 166 ["[w]hen a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to ' "square one" ' with regard to reunification efforts"].)

reasonable services does impede the juvenile court's ability to properly evaluate the prospects for family reunification," section 352 provides "an emergency escape valve . . . ." (*Michael G.*, at p. 636.) "A court's use of its discretionary authority under section 352 may be particularly appropriate in cases where a parent has never received reasonable services during the reunification stage."[6] (*Michael G.*, at p. 633, fn. 9.)

Here, a ruling in O.O.'s favor would establish that he did not receive any reasonable reunification services for six or 12

---

[6] Before the *Michael G.* decision, courts had "expressed uncertainty" as to whether section 366.22 required or permitted a juvenile court to extend reunification services past the statutory maximum of 18 months if the court found at the 18-month review hearing that the social services agency had failed to provide a parent with reasonable reunification services in the 12- to 18-month period. (*Michael G.*, *supra*, 14 Cal.5th at pp. 623, 620.) The *Michael G.* court concluded such extensions were not mandatory or automatic (*id.* at pp. 620, 627), but section 352 allowed a juvenile court to extend reunification services beyond 18 months when there are "exceptional circumstances constituting good cause for the continuance" and it would not be contrary to the child's interests. (*Id.* at p. 635.) Subsequently, section 366.22 was amended, effective January 2024, to provide that if the court finds reasonable services have not been provided at the 18-month review hearing, "the court *shall* extend reunification services for an additional six months," unless the court finds extending services would be detrimental to the child, based on evidence from a mental health professional. (§ 366.22, subd. (b)(2)(A)–(B), italics added; see Stats. 2023, ch. 714, § 2.5.) Although the *Michael G.* court's holding has thus been superseded by statute with respect to the 18-month review hearing, we continue to find the general reasoning applicable regarding the potential arguments available to a parent seeking an extension of reunification services.

months, which could potentially support a request under section 352 for a continuance of a permanency planning hearing and additional reunification services.  On the other hand, rejecting O.O.'s claims as moot would permanently insulate from review any erroneous finding that O.O. received adequate reunification services in the first six or 12-month period.

*In re D.N.* (2020) 56 Cal.App.5th 741, is instructive.  In that case, Division One of this District rejected the Department's argument that a father's appeal of finding of detriment was moot because the minor had been returned to his mother's custody.  In *D.N.*, as in this case, the juvenile court retained jurisdiction and ordered the mother to submit to drug testing.  (*Id.* at p. 755.)  On appeal, the court expressed concern that if it "rule[d] the issue moot, the juvenile court's finding of detriment may escape review despite the potential deleterious consequences to father of that ruling."  (*Id.* at p. 758.)  For example, "if the juvenile court terminates its jurisdiction at a later section 364 hearing, then this detriment finding could affect whether the court grants mother sole physical custody of [the minor] in the exit order."  (*Ibid.*)  Alternatively, the juvenile court might remove the minor from his mother under section 387 if she relapsed, or, "if mother does not timely mitigate the substantial risk of harm to [the minor] resulting from her substance use, then the juvenile court could set a section 366.26 hearing to determine whether to terminate both parents' rights, given that the court has already found by a preponderance of the evidence that returning the child to father's custody poses a substantial risk to [the minor's] 'safety, protection, or physical or emotional well-being.' [Citation.]"  (*Id.* at pp. 758–759.)

19

Here, too, there is a non-speculative possibility that O.O. will suffer harm if the juvenile court's reasonableness findings were erroneous. Although we cannot at this point direct the juvenile court to order the Department to provide O.O. an additional period or additional periods of reunification services, we can instruct the juvenile court to reverse and vacate any erroneous findings. (*In re A.G.* (2017) 12 Cal.App.5th 994, 1005 ["remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services to that parent *and* to make a finding on the record that reasonable services were not offered or provided"].) We therefore deny the Department's motion to dismiss the appeal and consider the merits.

III. **Substantial Evidence Supports the Juvenile Court's Reasonable Services Finding at the 12-Month Review Hearing, But Not at the Six-Month Review Hearing**

O.O. contends that the juvenile court's own statements at the six-month hearing demonstrate that it did not find that the Department provided O.O. with reasonable services by clear and convincing evidence. He further argues that there was no clear and convincing evidence "that the department made a [ ] reasonable plan to make sure father was able to see his daughter and that it made efforts to overcome difficulties in ensuring the visits actually took place."

We agree that substantial evidence does not support a juvenile court finding by clear and convincing evidence that the Department provided or offered "reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child . . . ." (§ 366.21, subd. (e)(8).)

20

The juvenile court's detriment finding with respect to O.O. was based in part on the absence of a relationship between O.O. and Ari. R. Visitation was necessary to address this concern. Indeed, courts have recognized that " '[v]isitation is a critical component, probably the most critical component, of a reunification plan,' " and that " '[w]ithout visitation of some sort, it is virtually impossible for a parent to achieve reunification.' [Citation.]" (*Serena M.*, *supra*, 52 Cal.App.5th at p. 673.) "To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child." (*Ibid.*) "The longer parent and child live with no visitation, the less likely there will ever be any meaningful relationship." (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 973.)

Providing reasonable services thus required the Department to assist O.O. in having the visits the court ordered. Yet, O.O. had only a single visit with Ari. R. between the disposition hearing in June 2023 and the six-month review hearing in December 2023. Although O.O.'s insistence on a Department monitor may have posed "a major obstacle to any reunification efforts," the Department was required to provide evidence of "[s]ome effort . . . to overcome obstacles to the provision of reunification services." (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 973.) The record before the juvenile court disclosed no such efforts.

Moreover, the *Department* has "the obligation to make a record at the six-month and twelve-month review hearings establishing that reasonable services were provided." (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1478.) The last minute information was the only document the Department provided to the court addressing O.O.'s visitation before the six-month review

21

hearing.  The one-paragraph report indicated that O.O. only wanted a monitor from the Department for his visits.  But it did not inform the court that at any point in the previous six months the Department had discussed the issue with O.O. in any detail, investigated other Department resources to facilitate O.O.'s visitation, identified other neutral monitors, or attempted to work with O.O. to find a solution.  Although the Department claimed "great difficulty in arranging further visits . . . due to [Ari. R's] school schedule," it did not address why a preschool-aged child could not be taken out of school before 6:00 p.m. for visits.  The report offered no other information to explain why only one visit had occurred in six months.

The record therefore lacks substantial evidence to support the court's reasonable services finding at the six-month review hearing.  The Department's representations in the last minute information and at the review hearing that it would try to arrange further visits in the future, and would assess a Department monitor going forward, were insufficient to remedy the lack of any record establishing that it provided reasonable services in the six months that had passed since the disposition hearing.

The same is not true of the period between the six-month and 12-month review hearings, however.  Because of delays in conducting the jurisdiction and disposition hearings, the 12-month review hearing took place only a little over one month after the six-month review hearing.  The record establishes that in that time, the Department placed O.O. and Ari. R. on a waitlist for a Department monitor and was regularly checking on the status.  O.O.'s exhibit shows that the social worker asked O.O. about a possible weekly visit between 12:30 and 1:30 p.m.,

which indicates that the Department was considering the possibility of visits during school hours, in addition to exploring having weekend visits monitored by a case aide. While waiting on the availability of a Department monitor, the social worker attempted to arrange visits that she would monitor. One such visit was scheduled and then canceled by O.O. The Department did what the juvenile court instructed it to do at the six-month review hearing. We conclude that substantial evidence supports that its efforts were reasonable considering the obstacle posed by O.O.'s refusal to have available non-Department individuals, such as the caregiver, monitor his visits with Ari. R.

To the extent O.O. argues that the Department's failure to explain why it was only exploring potential resolutions to visitation difficulties between the six- and 12-month review hearings supports a finding that no reasonable services were provided at the 12-month review hearing, we disagree. The Department's failure to provide (or to document its efforts to provide) reasonable services at one point cannot mean that the Department's subsequent services will forever be inadequate, even when reasonably designed to remedy the issue that led to the loss of custody.

## DISPOSITION

The juvenile court's order of December 6, 2023 is reversed only with respect to its finding that O.O. received reasonable reunification services, and that finding is vacated. The matter is remanded to the juvenile court to enter a new order finding that reasonable reunification services were not provided to O.O. as of that date. In all other respects, the juvenile court's orders of December 6, 2023 and January 18, 2024 are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.